504 So.2d 907 (1987)
STATE of Louisiana
v.
Eurl THOMAS, Jr.
No. KA 86 0710.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Writ Denied June 5, 1987.
*908 Bryan Bush, Dist. Atty., Office of Dist. Atty., Baton Rouge, by Jesse Bankston, Asst. Dist. Atty., for plaintiff-appellee.
Alton Moran, Director, Office of Public Defender, Baton Rouge, by David Beach, Appellate Counsel, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
GROVER L. COVINGTON, Chief Judge.
Eurl Thomas, Jr., was charged by indictment with the second degree murder of George Thompson, in violation of La. R.S. 14:30.1. He pled not guilty. A first jury trial ended in a mistrial when the jurors were unable to reach a verdict. In a second jury trial, the defendant was found guilty as charged. He received the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging thirty-eight assignments of error.[1]
*909 Assignments of error numbers 2, 4, 6, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 22, 26, 27, 28, 30, 31 and 33 were not briefed on appeal and are, therefore, considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
Shortly before 11:00 p.m. on October 26, 1984, George Thompson was shot and killed on the Lower Zachary Road, located in East Baton Rouge Parish. His body was found lying in front of his car, a silver, Ford Thunderbird, which was parked on the shoulder of the road and facing east. The hood of his car was open; and one end of a pair of jumper cables was caught in the front bumper, while the other end was tangled around his legs. An autopsy later revealed that the victim died from being struck in the head by a 12 gauge shotgun blast fired at close range.
At the trial, two prosecution witnesses, Kyle Behrens and Richard Hanna, testified that they had driven by the location of this shooting incident shortly before it occurred that night. Both of these witnesses testified that they had observed a different *910 vehicle parked on the shoulder of the road and facing west. Kyle Behrens testified that she observed a yellow car. When shown a picture of a yellow car which belonged to Manuel Perkins, she testified that the picture of his car resembled the car that she had seen before the shooting. Both prosecution witnesses heard a gunshot coming from the direction of the car that they had observed on the side of the road. Both of these witnesses placed the time of this gunshot at approximately 10:45 p.m. After hearing the shotgun blast, Richard Hanna observed that the first vehicle was gone but a second vehicle was parked on the shoulder facing east. This second vehicle was the victim's car. Several days later, acting on an anonymous phone tip that the car involved in the shooting could be found at some apartments located at 1150 Spanish Town Road in Baton Rouge, Zachary police officers went to that address and observed an old, yellow, Buick LeSabre which belonged to Manuel Perkins and his wife, Brenda. After questioning Manuel and Brenda Perkins and several of her relatives, the investigation focused on the defendant, Eurl Thomas, who lived in Los Angeles, California, but had been visiting relatives in Baton Rouge when the shooting occurred.
George Thompson's wife, Lois Thompson, was the defendant's sister. The defendant had another sister in Baton Rouge, Wilma Jackson. He spent the night at her apartment on Hanks Drive on the night of the shooting. Brenda Perkins and Patricia Harrell were the defendant's nieces. Their mother, who had died more than ten years before, had been another one of the defendant's sisters. Manuel and Brenda Perkins both testified that the defendant had borrowed their car on the day of the shooting. The defendant drove Manuel Perkins to work in the afternoon and then went to the K-Mart Store on Airline Highway with Brenda. Brenda Perkins testified that the defendant purchased some shotgun shells in her presence. She also testified that, when they reached the car, the defendant informed her that he was going to kill George Thompson with a shotgun because George Thompson was planning to leave his wife, Lois, for another woman. The defendant then informed Brenda Perkins that he was going to pretend that his car was broken down on a dark road in Zachary, and call George Thompson and offer him $50.00 to drive out and help him fix the car. Brenda Perkins also testified that the defendant told her that her Aunt Lois and her Aunt Wilma also knew what the defendant was going to do. Brenda Perkins testified that, at the time, she did not believe the defendant was actually going to kill George Thompson.
Manuel Perkins testified that the defendant picked him up from work at approximately 8:30 p.m. and brought him home. While Manuel and Brenda Perkins went to a friend's birthday party that evening, the defendant was gone with their car. Manuel Perkins testified that the defendant returned with the car between 11:30 p.m. and 12:00 a.m. When the defendant returned, Manuel Perkins noticed that the hood of the car was bent on the driver's side. Manuel Perkins testified that he drove the defendant to Wilma Jackson's apartment on Hanks Drive and that, during their conversation in the car, the defendant stated: "I messed up." On the morning following the shooting, when Brenda Perkins learned that George Thompson had been killed, she testified that she told her sister, Patricia Harrell, what the defendant had related to her the day before about his plan to kill George Thompson. Manuel Perkins testified that, when he saw the defendant the next morning, the defendant pulled him aside and stated that he (Manuel) should not tell anyone that the defendant had used the car the night before. It was Patricia Harrell who made the anonymous phone call to the police about Manuel Perkins' car.
Lorna Levens, the defendant's girlfriend at the time, testified that the defendant informed her on Friday morning, October 26, that he was going to return to California the following Monday and then asked her if she wanted to go back with him. She testified that on Saturday, October 27, the defendant related to her that he was worried because he had just found out that *911 George had been killed and that he had used Manuel's yellow car that night.
The defendant was arrested in Los Angeles, California, on April 11, 1985. He made a statement to Los Angeles police officers Keith Williams and Ronald Colquitt that he had left Louisiana because people here were accusing him of the murder of George Thompson. The officers testified that he told them that he had been hunting when George Thompson was killed. They also testified that he informed them that he knew George Thompson was killed with a shotgun.
The defendant waived extradition. When he was returned to Louisiana, he made a taped statement at the Zachary police station. This statement was over three hours in length; however, due to a tape recorder malfunction, only two hours of this statement were actually recorded. In this statement, which is largely exculpatory, the defendant denied shooting George Thompson.
While awaiting trial, the defendant, who was incarcerated in the East Baton Rouge Parish Prison, approached Deputy Darrell Sutton and asked him to testify that he (Sutton) and the defendant had carried on a thirty minute conversation in the parking lot of a Hanks Drive apartment complex on the night George Thompson was murdered. Deputy Sutton, who worked at the East Baton Rouge Parish Prison, had been a security guard at these apartments on Hanks Drive where, as it happened, the defendant's sister, Wilma Jackson, resided.
The defense theory of the case was that Manuel Perkins, not the defendant, murdered George Thompson. The defense pointed out that both Manuel Perkins and George Thompson had been employees of Associated Grocers. The defense suggested that George Thompson was murdered because he crossed the picket lines to work during a long strike of Associated Grocers by local union members. The defendant did not testify on his own behalf. However, his sister, Wilma Jackson, testified that he spent the night at her apartment on Hanks Drive on the night of the shooting incident. She testified that he arrived at her apartment at approximately 9:00 p.m. that evening. In brief, the defense suggests that Lois Thompson, the defendant's sister and the wife of the victim, would have provided exculpatory information for the defendant if granted use immunity. However, when the trial court denied the defense request for use immunity for Lois Thompson, her attorney informed the court that she would invoke the 5th Amendment and refuse to testify.

ASSIGNMENTS OF ERROR NUMBERS 1, 3 AND 12:
(1, 2 and 3 in brief)
These assignments of error arise from one of the trial court's rulings on discovery. In assignment of error number 1, the defendant contends that the trial court erred in denying a defense motion for discovery and in failing to impose sanctions upon the prosecution for the violation of a discovery order. In assignment of error number 3, the defendant contends that the trial court erred in denying a defense motion for a continuance, which was made when the trial court allowed the prosecution to amend its witness list the day before trial. In assignment of error number 12, the defendant contends that the trial court erred in allowing a prosecution witness, Deborah Pointer, to testify when her name had been added to the prosecution's witness list only the day before trial.
At a discovery hearing several weeks before trial, the defendant complained that the prosecution had filed an insufficient answer to a certain discovery question. The prosecution's response to the defendant's discovery question merely referred the defendant to the witness list. Therefore, the trial court apparently issued an order that the prosecution would be required to furnish its witness list (containing both names and addresses) to the defendant and, furthermore, the prosecution would not be allowed to call as a witness any person whose name was not on this list. On March 10, 1986, the day before the second trial was to begin, the prosecutor informed the trial court and defense counsel that he was amending the witness list by adding approximately eleven names.
*912 The prosecutor stated that these witnesses were being added because of recent information which he had received about the case. The prosecutor stated that he had only been aware of this information a few days before and that he was still attempting to contact some of these witnesses. He could only furnish the addresses of three or four of these witnesses at the time. Defense counsel objected, arguing that this was a violation of the discovery order imposed by the trial court in the earlier ruling. Defense counsel argued that the prosecutor had violated his continuing duty to disclose by failing to formally notify defense counsel about these witnesses as soon as the new information was learned. Defense counsel requested that the trial court remedy this violation of its prior discovery order by disallowing testimony at trial from any of these new witnesses. The trial court refused to impose the sanction requested by defense counsel. Instead, the trial court ordered the prosecutor to immediately inform defense counsel of the names of these new witnesses and the addresses that were known at the time. The trial court further noted that, if the prosecution received new information about the names or addresses of any of its witnesses, this information would have to be disclosed to the defendant by 9:00 a.m. the following morning because, at that time, the trial court would not allow any new names to be placed on the prosecution's witness list.
La.C.Cr.P. art. 729.3 provides:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
La.C.Cr.P. art. 729.5 provides:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such a party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court.
In assignment of error number 1, the defendant contends that the trial court erred in denying his motion for discovery. However, from the record it is apparent that the defendant was not denied discovery. The trial court ensured that its original order requiring the prosecution to furnish names and addresses of all of its witnesses to the defense would be fulfilled by imposing the 9:00 a.m. deadline. In this assignment of error, the defendant also complains that the trial court failed to impose the sanction which he requested, i.e., disallowing the testimony of these new witnesses. La.C.Cr.P. art. 729.5 clearly indicates that the imposition of sanctions, or other measures, is within the sound discretion of the trial court. See State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). We conclude that the trial court did not abuse its discretion in denying the defendant's requested sanction. Therefore, we also conclude that Deborah Pointer, whose name was added to the prosecution's witness list the day before trial, was properly allowed to testify over defendant's objection.
*913 In assignment of error number 3, the defendant contends that the trial court erred in denying his request for a continuance based on the discovery of these new witnesses. In fact, the record indicates that the defendant requested no such continuance in this instance. This assignment of error actually refers to a similar situation which occurred before the first trial. During a discovery hearing before the first trial, the prosecution added David Powell, a K-Mart employee, to its witness list. The defendant objected, but the trial court allowed the addition. At this point, the defendant requested a continuance which was also denied by the trial court. Since the defendant's complaint that his continuance was denied obviously relates to a situation which occurred before the first trial, it is irrelevant to the instant case.
For the above reasons, these assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER 5:
(No. 4 in brief)
In this assignment of error, the defendant contends that the trial court erred in refusing to grant immunity to a potential witness, Lois Thompson. Lois Thompson, the victim's wife, was also the defendant's sister. The defendant contended that, if she were granted immunity, her testimony would provide exculpatory information for him. However, when the trial court denied defense witness immunity, her attorney appeared and informed the court that, if she were called to testify, she would invoke the self-incrimination clause of the 5th Amendment.
In State v. Mattheson, 407 So.2d 1150, 1160-1161 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983), the Louisiana Supreme Court stated:
There is no statutory authority for a Louisiana Court to grant a defense witness use immunity absent a request from the attorney general together with the district attorney for the district in which the proceeding is or may be held. La. Code Crim.P. art. 439.1. Therefore, any judicially-fashioned immunity must arise from the constitutional guarantees of compulsory process or due process....
We do not consider that the sixth amendment supports a claim for defense witness immunity. Traditionally, the sixth amendment's compulsory process clause gives defendant the right to bring his witness to court and have the witness' non-privileged testimony heard, but does not carry with it the traditional right to displace a proper claim of privilege, including the privilege against self-incrimination.... Nor has section 16 of article 1 of the Louisiana Constitution of 1974 been construed to grant such a right. Additionally, we do not consider that the due process clause requires that defense witness immunity must be ordered whenever it seems fair to grant it. The essential fairness required by the fifth amendment guards the defendant against overreaching by the prosecutor and insulates him against prejudice. It does not create general obligations for prosecutors or courts to obtain evidence protected by lawful privileges....
We consider that a trial judge properly rejects a claim for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution....
(footnote omitted; citations omitted).
In the instant case, the prosecution's theory was that the defendant murdered George Thompson because George Thompson was about to leave his wife, Lois, for another woman. Such a theory suggests the possibility that Lois Thompson knew that the defendant was going to murder her husband and perhaps even participated in the murder. Because she was a potential target of prosecution, the trial court properly rejected this request for defense witness immunity. State v. Mattheson, supra.
This assignment of error is without merit.

ASSIGNMENTS OF ERRORS NUMBERS 7 and 24:
(Numbers 5 and 6 in brief)
In these assignments of error, the defendant contends that the trial court erred *914 in allowing into evidence an inculpatory statement made by the defendant to Deputy Darryl Sutton while the defendant was incarcerated in the East Baton Rouge Parish Prison. Specifically, the defendant contends that the statement should not have been introduced into evidence because: (1) the prosecution failed to list this statement in its answers to the defendant's discovery request; (2) the prosecution failed to satisfy the notice requirement of La.C.Cr.P. art. 768; and (3) the statement contained inadmissible evidence of other crimes.
At the first trial, the prosecution attempted to introduce this statement into evidence without listing it in its answers to the defendant's discovery request and without providing notice as required by La.C. Cr.P. art. 768. Therefore, at the first trial, the trial court ruled that the state could not introduce evidence of the statement made by the defendant to Deputy Sutton. At the second trial, the prosecution again attempted to introduce this statement without properly including it in its answers to the defendant's discovery request. Contrary to the defendant's assertion in his brief, however, the defendant was given proper notice before the second trial as required by La.C.Cr.P. art. 768. In ruling that the statement would be admissible at this trial, the trial court first noted that the prosecution had complied with La.C.Cr.P. art. 768. Secondly, the trial court noted that, although the prosecution had again failed to include this statement in its discovery answers, the defendant had been made aware of the existence of this statement and its content when he successfully moved to have it ruled inadmissible at the first trial. Therefore, although the trial court recognized that the prosecution had technically failed to comply with discovery, the trial court ruled that the defendant would not be surprised or prejudiced if the statement were allowed into evidence in the second trial.
The trial court's ruling was correct. The failure to comply fully with discovery rules does not constitute reversible error unless actual prejudice results. State v. Jones, 474 So.2d 919, 928 (La. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 2906, 90 L.Ed.2d 993 (1986). In the instant case, as in State v. Jones, supra, the defendant knew the statement existed and knew the substance of the statement. Therefore, the defendant was not surprised or prejudiced by the introduction into evidence of the statement under these circumstances.
Finally, the defendant contends that the statement should have been excluded because it contained evidence of other crimes and the prosecution had failed to give Prieur notice. Deputy Sutton testified that he worked at the East Baton Rouge Parish Prison and that, while the defendant was incarcerated at the Parish Prison for the instant offense, the defendant approached him and asked him to fabricate an alibi. Deputy Sutton testified that he had an off-duty job at an apartment complex located on Hanks Drive. Wilma Jackson, the defendant's sister, lived in this apartment complex. The defendant asked Deputy Sutton to testify that he saw the defendant at these apartments on the night of October 26, 1984, and that they engaged in a thirty minute conversation in the parking lot that night. At the trial, Deputy Sutton testified that he did not remember seeing or talking to the defendant that night. Because the statement indicates that the defendant requested Deputy Sutton to fabricate an alibi, the defendant contends that the statement contained inadmissible evidence of other crimes.
In State v. Graves, 301 So.2d 864, 866 (La.1974), the Louisiana Supreme Court stated:
Although an attempt to bribe or influence a witness is a criminal offense under Louisiana law, La.R.S. 14:118, an attempt by an accused in a criminal prosecution to induce a witness to testify falsely may be introduced in evidence against him. This evidence is admissible since it leads to an inference that, if admitted, it would operate unfavorably to the accused. Similarly, an attempt to fabricate evidence is receivable in a criminal prosecution as evidence of one's guilt of the main facts charged, such *915 fabrication being in the nature of an admission....
Deputy Sutton's testimony was clearly relevant. We hold that the statement's probative value outweighed whatever prejudice was caused by its admission. Therefore, the trial court properly admitted the statement into evidence. See State v. Clark, 492 So.2d 862, 865 (La.1986).
For the above reasons, these assignments of error are without merit.

ASSIGNMENTS OF ERROR NUMBERS 21, 23, 25, and 29:
(Numbers 7, 8, 9, and 10 in brief)
When the defendant was arrested in Los Angeles, California, he made a statement to the two police officers who arrested him. After he waived extradition and was returned to Louisiana, he made a lengthy, tape-recorded statement at the Zachary Police Department. In these assignments of error, the defendant contends that the trial court erred in allowing these statements into evidence.
In assignment of error number 25, the defendant contends that the trial court erred in allowing Officers Keith Williams and Ronald Colquitt to testify about oral statements made to them by the defendant after his arrest. On April 11, 1985, Los Angeles Police Officers Keith Williams and Ronald Colquitt arrested the defendant. After they transported him back to the station, Officer Williams read the defendant his Miranda rights from a field officer's notebook. Both officers testified that the defendant appeared to be a person of normal intelligence and that he did not appear to be drugged or intoxicated. Furthermore, the officers testified that they did not threaten or coerce the defendant in any manner. They testified that the defendant appeared to understand his Miranda rights and that he freely and voluntarily waived these rights and made a statement to them.
In the instant case, the defendant does not raise the issue of the voluntariness of his statement. Rather, the issue is whether or not he made his statement after being informed of, and making a knowing and intelligent waiver of, his Miranda rights. The defendant never testified that he was not informed of his Miranda rights. However, he argues that the prosecution has not sufficiently proved that the officers administered the Miranda rights to him. At the trial, defense counsel placed great emphasis on the fact that neither officer could recite the Miranda rights from memory and that neither officer had remembered to bring his field officer's notebook to court. He also placed emphasis on the fact that the officers did not utilize a written waiver of rights form which the defendant would sign to acknowledge that he had received his Miranda rights. However, the officers testified that it was standard operating procedure for them to administer Miranda warnings orally from their field officer's notebook.
In California, there is no requirement whatsoever that the Miranda warnings be recorded or written. People v. Johnson, (1973, 4th Dist.) 32 Cal.App.3d 988, 109 Cal.Rptr. 118. Thus, if it appears that a defendant was orally advised of his rights and that he understood such advice, statements made by him to an investigating officer are properly received in evidence. See 19 Cal.Jur.3d (Rev.), Criminal Law § 2196. The prosecution has the burden of proving the advisement and waiver of Miranda rights and the voluntariness of a confession beyond a reasonable doubt. See People v. Denney, (1984, 5th Dist.) 152 Cal.App.3d 530, 199 Cal.Rptr. 623. In determining whether the defendant's confession is the product of a rational intellect and a free will, the totality of the circumstances surrounding the confession must be taken into account. People v. Williams, (1984, 4th Dist.) 157 Cal.App.3d 145, 203 Cal.Rptr. 562.
In Louisiana, before a confession or statement can be introduced into evidence, the prosecution has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451. It must also be established that the accused who makes a confession during *916 custodial interrogation was first advised of his Miranda rights. State v. Heath, 447 So.2d 570, 573 (La.App. 1st Cir.1984), writ denied, 448 So.2d 1302 (La.1984). It is not required, however, that the police have either a signed waiver of rights form or another officer to substantiate that such rights were given to the defendant. The prosecution need only prove that the defendant was given the Miranda rights. State v. Odds, 448 So.2d 868 (La.App. 1st Cir.1984), writ denied, 477 So.2d 701 (La. 1985).
The testimony from these two Los Angeles police officers is the only evidence that defendant received his Miranda warnings before he made a statement to them. However, no contradictory evidence was introduced, nor is there anything in the record which might indicate otherwise. The trial court ruled that the defendant had properly been advised of his Miranda rights and that he had made a knowing and voluntary waiver of these rights before he made a statement to Officers Williams and Colquitt.
In reviewing the ruling of the trial court based upon a ruling of fact, great weight is placed on its determination because the trial court had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. These findings will not be disturbed unless they are not supported by the evidence. State v. Heath, supra. The defendant was properly advised of his Miranda rights under federal law. The defendant's statement is admissible into evidence whether the law of the forum (Louisiana) or the law of the place where it was obtained (California) is applied.[2] The ruling of the trial court admitting the statement into evidence was correct.
In assignments of error numbers 21, 23, and 29, the defendant contends that the trial court erred in admitting into evidence the taped statement which the defendant made at the Zachary Police Department. After the defendant's arrest in Los Angeles, California, he waived extradition and was returned to Louisiana. On April 22, 1985, the defendant made a taped statement at the Zachary Police Department in the presence of Lt. Charles Clark and Sgt. Bernie Taylor. This taped statement was over three hours in duration. However, due to a malfunction in one of the two tape recorders used, only the first and third hours of the statement were actually recorded. In these assignments of error, the defendant does not contest the voluntariness of his statement or the waiver of his Miranda rights. Rather, the defendant contends that the trial court erred in failing to suppress the taped statement since a large portion of it was missing. However, the trial court overruled the defendant's objection and allowed the taped statement to be played to the jury.
La.R.S. 15:450 provides:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
In State v. Marmillion, 339 So.2d 788, 793 (La.1976), the Louisiana Supreme Court stated: "The law does not require the production of nonexistent portions *917 of the confession or portions which cannot be recalled." The best evidence of a tape recorded statement is the unaltered tape. State v. Auzenne, 305 So.2d 507 (La.1974). In the instant case, it is true that a significant portion of the defendant's taped statement was lost due to a malfunction of one of the two tape recorders. However, the best evidence rule was met when the remaining portion of the taped statement was played in its entirety to the jury. There is no indication that the gaps in the tape recorded statement were caused by deliberate police conduct. Furthermore, on the portion of the taped statement which was played to the jury, the defendant stated that he did not kill George Thompson. Although Sgt. Taylor could not remember everything that was contained in the missing portions of the statement, he testified that the missing portions of the statement were consistent with the part of the statement which was played to the jury and that the missing portions contained only exculpatory information. We conclude that the trial court did not err in allowing into evidence the remaining portion of the taped statement. See State v. Bonanno, 373 So.2d 1284 (La. 1979); State v. Marmillion, supra.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NUMBERS 32, 34, 35, and 36:
(Numbers 11, 12, 13, and 14 in brief)
In these assignments of error, the defendant contends that the trial court erred in overruling his objections to improper statements made by the prosecutor during rebuttal closing argument. He also contends that the trial court erred in denying his motion for mistrial based on the cumulative effect of the prosecutor's improper statements. He argues that the prosecutor made several mis-statements of defense counsel's arguments and through these misstatements, the prosecutor "in effect tried to shift the burden of proof from the State to the defense." The first alleged misstatement by the prosecutor, and the defendant's objection, occurred as follows:
When he came out in his opening he told you what he was going to do. He was going to prove that Manuel Perkins, Brenda Perkins, Manuel specifically ...
MR. PRICE: Judge, I don't have rebuttal so I've got to object. I did not say that in my opening statement. I did not say I was going to prove anything because I don't have to prove anything.
THE COURT: Objection is overruled. The jury will rely upon their own memories.
The second alleged misstatement made by the prosecutor, and the defendant's objection thereto, occurred as follows:
His statement in Zachary, I was going hunting. At 5:30, hey, I was in K-mart. He went in K-mart. Remember Mr. Price didn't put him in K-mart. He ...
MR. PRICE: Judge, I'm going to have to object to that again as a misstatement of my argument. I admitted that he went in K-mart and Brenda Perkins handed him the bag in K-mart.
THE COURT: Objection is overruled. The jury will rely on its own memories as to the evidence and arguments of both counsel.
The third alleged misstatement by the prosecutor, and the defendant's objection thereto, occurred as follows:
Do you remember in his statement he told, yes, about six blocks I saw this person, I saw this person. Did you see them?
MR. PRICE: Judge, I'm going to have to object to that again ...
And my witnesses ...
MR. PRICE: I'd like an instruction from the Court that the Defense does not have to prove anything ...
And once ...
MR. PRICE: Mr. Walsh keeps trying to place the burden of proof on ...
THE COURT: One at a time. Go ahead.
MR. PRICE: Mr. Walsh improperly is trying to convince the jury that I have a burden or (sic) proof in this case. That simply is not the case.

*918 MR. WALSH: Your Honor, once he places himself in a position where he puts on a case, I have the right to attack his case, also, to comment upon the lack of evidence presented.
THE COURT: Objection is overruled. I will instruct the law as to the burden of proof during my jury charges as I did to you during voir dire.
MR. PRICE: I'd object and assign error to the Court's ruling.
THE COURT: Your objection is noted and an assignment of error is reserved.
La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Although the opening and closing arguments made by defense counsel are not included in the record, it is apparent from the record that the defense theory in this case suggested that it was Manuel Perkins, not the defendant, who shot and killed George Thompson. When reviewing the prosecutor's comments above, it is obvious that he was attempting to focus upon the lack of evidence in support of the defendant's theory that Manuel Perkins committed the murder. Manuel Perkins was not on trial in this case. Nor did the defense bear any burden of proof. But the prosecutor was allowed to draw conclusions from the lack of evidence to support the defense theory in this case. La.C.Cr.P. art. 774. The prosecution on rebuttal had the right to answer the argument of the defendant. See State v. Winn, 412 So.2d 1337 (La.1982). Doing so did not create a shift in the burden of proof to the defense, as suggested by the defendant in his brief. Furthermore, any possible doubt about the burden of proof which might have been created by these comments was dispelled by the trial court when it stated: "Objection is overruled. I will instruct the law as to the burden of proof during my jury charges....". See State v. Jenkins, 338 So.2d 276 (La.1976). The defendant also complained that he was prejudiced when the prosecutor misstated what defense counsel had argued earlier. Again, because defense counsel did not request his opening and closing arguments when designating the record for this appeal, it is impossible to determine from the record whether or not the prosecutor was misstating defense counsel's arguments. However, even if the prosecutor was misstating defense counsel's arguments, the misstatements were immediately cured when the trial court informed the jury that they should rely upon their own memory about the evidence presented and the arguments of both counsel.
At the end of the prosecutor's rebuttal closing argument, the defendant requested a mistrial based upon the cumulative effect of the improper argument made by the prosecutor during his rebuttal closing argument. At this point, the defendant did not state further reasons for this motion for mistrial, but apparently relied upon the objections he entered which are contained in the excerpts quoted above. The trial court denied this motion for mistrial.
The prosecutor's remarks to which the defendant objected are not included among the provisions of La.C.Cr.P. art. 770, which mandates the ordering of a mistrial. Therefore, La.C.Cr.P. art. 771 is the appropriate article to apply in this instance. La. C.Cr.P. art. 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; ...

*919 In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
When the defendant made his motion for mistrial, he did not request, nor did the trial court give, an admonition to the jury. However, the motion for mistrial was clearly based upon the alleged misstatements which had just occurred during the prosecutor's rebuttal closing argument. In overruling each of the three objections entered by the defendant to these alleged misstatements, the trial court on each occasion admonished the jury. In overruling the defendant's motion for mistrial, the trial court obviously concluded that its earlier remarks to the jury and its charge to the jury would be sufficient to cure any prejudice which may have resulted from the prosecutor's alleged misstatements. Before a verdict will be overturned on the basis of improper argument, we must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. See State v. Guidry, 476 So.2d 500 (La.App. 1st Cir.1985), writ denied, 480 So.2d 739 (La. 1986). We find that the above alleged misstatements did not influence the jury in light of the trial court's admonitions. Therefore, we conclude that the trial court correctly exercised its discretion in denying the defendant's motion for mistrial.
For the above reasons, these assignments of error are without merit.

ASSIGNMENTS OF ERROR NUMBERS 37 AND 38:
(Numbers 15 and 16 in defendant's brief)
In these assignments of error, the defendant contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt and that the trial court erred in denying his motion for post-verdict judgment of acquittal.
In State v. Rosiere, 488 So.2d 965, 968 (La.1986), the Louisiana Supreme Court stated:
Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Richardson, 425 So.2d 1228 (La. 1983).
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a purely separate test from the Jackson sufficiency standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden.
La. R.S. 14:30.1 provides:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Specific criminal intent is that state of mind which exists when the circumstances *920 indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). The state must show specific intent on the part of the defendant. Although intent is a fact question, it need not be proven as a fact. Instead, it may be inferred from the circumstances of the transaction. La.R.S. 15:445; State v. Boyer, 406 So.2d 143 (La.1981).
Although no eyewitness testimony placed the defendant at the scene of the crime, the prosecution introduced considerable circumstantial evidence indicating that the defendant murdered George Thompson. Manuel Perkins' car was observed at the scene shortly before the shooting occurred. There is no question that the defendant borrowed Manuel Perkins' car that night. Although the defense contends that Manuel Perkins committed this offense, the prosecution introduced testimony from several witnesses to prove that Manuel Perkins was at a party during the time period in which this offense occurred. Furthermore, the prosecution introduced the direct testimony of Brenda Perkins, proving that the defendant revealed to her his detailed plan to murder George Thompson.
In addition to Brenda Perkins's testimony, and the circumstantial evidence in this case, the defendant's words and actions also incriminate him. On Friday, October 26, the day of the shooting, the defendant told his girlfriend, Lorna Levens, that he planned to return to California the following Monday. On Saturday, the day after the shooting, the defendant told Lorna Levens that he was nervous because he had been driving Manuel Perkins' car on Friday and it had been observed at the scene of the crime Friday night. When he was arrested in Los Angeles, he first gave Officers Williams and Colquitt a false name. He also told them that he left Louisiana because people began accusing him of the murder. Furthermore, Manuel Perkins testified that, on the morning after the shooting occurred, the defendant had asked him not to reveal the fact that the defendant had borrowed his car the day before. Finally, in an act of apparent desperation, the defendant approached Deputy Sutton and asked him to fabricate an alibi.
When all of the evidence is viewed in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant committed the second degree murder of George Thompson. Therefore, the trial court did not err in denying the defendant's motion for post-verdict judgment of acquittal.
These assignments of error are without merit.
For the foregoing reasons, we affirm the conviction and sentence of the defendant.
AFFIRMED.
NOTES
[1] Assignments of Error:

1. The trial court erred in denying the defendant's motion for discovery and motion for the trial court to impose sanctions as provided by La.C.Cr.P. art. 729.5.
2. The trial court erred in denying the defendant's objection to the prosecution's discovery answers and the State's Brady notice.
3. The trial court erred in denying defendant's motion for a continuance.
4. The trial court erred in sustaining the prosecution's challenge for cause of a prospective juror.
5. The trial court erred in denying the defendant's request to grant Lois Thompson immunity.
6. The trial court erred in overruling a defense objection to a witness' repetitive testimony.
7. The trial court erred in allowing statements into evidence which had not been included in discovery.
8. The trial court erred in overruling the defendant's discovery motion and allowing Alvin Williams to testify.
9. The trial court erred in overruling the defendant's objection to the prosecution's questioning of a witness.
10. The trial court erred in overruling the defendant's objection to the prosecution's questioning of a witness.
11. The trial court erred in sustaining the prosecution's objection to defense counsel's questioning of a witness.
12. The trial court erred in overruling defense counsel's objection to testimony based on a prior discovery objection.
13. The trial court erred in accepting Ms. Lane as an expert witness.
14. The trial court erred in overruling defense counsel's objection to the prosecution's questioning of a witness.
15. The trial court erred in overruling defendant's objection to the prosecution's leading questions to a witness.
16. The trial court erred in overruling defendant's objections to items S-7 and S-39 as offered by the prosecution into evidence.
17. The trial court erred in overruling defendant's objection to the prosecution's questioning of a witness.
18. The trial court erred in overruling defendant's objection to the prosecution's questioning of a witness.
19. The trial court erred in accepting Ms. Guidry as an expert witness.
20. The trial court erred in allowing the prosecution to characterize fingerprinting as an exact science.
21. The trial court erred in allowing the defendant's taped statement to be admitted into evidence.
22. The trial court erred in overruling the defendant's objection to hearsay and a non-responsive answer.
23. The trial court erred in allowing the defendant's taped statement to be played to the jury.
24. The trial court erred in overruling the defendant's discovery objection and allowing the defendant's statement into evidence.
25. The trial court erred in allowing into evidence prior statements made by the defendant.
26. The trial court erred in overruling the defendant's objection to the admission of S-7 into evidence.
27. The trial court erred in overruling the defendant's objection to the admission into evidence of S-20 through S-26 in globo.
28. The trial court erred in overruling the defendant's objection to the admission of S-28 into evidence.
29. The trial court erred in overruling the defendant's objection to the admission of S-32 into evidence.
30. The trial court erred in overruling the defendant's objection to the admission of S-35 into evidence.
31. The trial court erred in overruling the defendant's objection to the prosecution's questioning of a witness.
32. The trial court erred in overruling the defendant's objection to statements made by the prosecutor during rebuttal closing arguments.
33. The trial court erred in denying the defendant's request that the court inform the jury of certain facts.
34. The trial court erred in overruling the defendant's objection to the prosecutor's misstating defense counsel's argument during rebuttal closing argument.
35. The trial court erred in overruling defendant's objection to the prosecutor's statements and erred in denying defendant's request for an instruction to the jury.
36. The trial court erred in denying the defendant's motion for a mistrial.
37. The trial court erred by imposing a verdict which is contrary to the law and evidence.
38. The trial court erred in denying the defendant's motion for a post-verdict judgment of acquittal.
[2] Miranda provides the minimum standard which must be met to render a defendant's statement admissible into evidence. However, each State may establish additional requirements for admissibility. In this regard, we do not decide whether the law of Louisiana or California is applicable in the instant case because under either the statement is admissible, and, thus, a decision on this issue is not essential to dispose of this assignment of error. Generally, the admissibility of evidence is controlled by the law of the forum. Harnischfeger Sale Corporation v. Sternberg Co., 179 La. 317, 154 So. 10 (1934); Wasson v. Gatling, 184 So. 596 (La.App. 2nd Cir.1938); Jackson v. Coggan, 330 F.Supp. 1060 (S.D.N.Y.1971); 31 C.J.S., Evidence § 5, pp 821-822; 15(A) C.J.S., Conflict of Laws § 22(9), pp 540-542. However, if it could be established that a State created a substantive right in favor of a defendant which controlled admissibility, it could be argued that the law of the place where the statement was taken is applicable. Cf. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Ible, 630 F.2d 389 (5th Cir.1980). We do not intend to imply that the law of both States must be complied with to render the statement admissible.