MARVIN, Judge.
Jenkins, who was convicted of attempted aggravated rape in 1975 and released from the penitentiary in 1986, appeals his 1988 conviction of possession of a firearm contrary to LRS 14:95.1.
Arguing seven assignments of error, he contends that the State has the burden of showing that the alleged firearm was a “working firearm,” that his inculpatory statement to police and the firearm should not have been admitted, and that the prosecution made improper comment in opening and in closing statements to the jury and failed to give him written notice before trial of the State’s intent to offer his incul-patory statement as required by CCrP Art. 768.
We affirm.
FACTS
Before midnight on July 20, 1987, two Ruston policemen in a patrol car observed a car occupied by Jenkins and two other adults parked in the center of a city street. They heard the car’s occupants shouting at each other and one of the occupants yell to another to “get the hell out [of the car].” They saw Jenkins exit the passenger side of the car and a pistol fall to the street near Jenkins’s feet.
The policemen, drawing their weapons, quickly got out of the patrol car, picked up the pistol, while ordering the other two to get out of the car. They ordered the adult female occupant to lean onto the hood of the car and the two male occupants to lay prone on the street. One officer immediately recited Miranda warnings to the three and inquired “whose gun is this and what’s going on?”.
Jenkins, responding to the officer’s inquiry, said that a lady from a grocery store had given him the gun a few days before to clean and oil it. A third policeman, who had just arrived on the scene, recognized Jenkins as a convicted felon and caused his immediate arrest for the crime of which he was convicted. Several rounds of ammunition for the .38 cal. pistol were found on defendant when he was thereafter searched.
The other two adults in the car essentially corroborated the testimony of the policemen which is summarized above. This testimony was presented at the hearing of the motion to suppress in September 1987 and at the trial about six months later.
ADMISSIBILITY OF THE PISTOL AND DEFENDANT’S STATEMENT
Jenkins essentially contends that the conduct of the police constituted an invalid arrest, without probable cause, and that the seizure of the pistol without a warrant cannot be upheld as an incident of the arrest. The policemen acknowledged that they did not know whether any crime had been, or was about to be, committed when they picked up the pistol from the street.
The pistol, a .38 cal. revolver, was on the street, readily accessible to anyone nearby, and was not seized as the result of a search. It was admissible evidence.
Resolution of the “presence” of the officers near the pistol (in actuality, the stop or detention issue), hinges not upon the officers’ knowledge of a crime, but upon a hindsight evaluation of the reasonableness of the “suspicion” of the officers that one or more of the adults in the car had been, or were about to be, engaged in the commission of an offense. Under the circumstances, we agree that the officers’ suspicion, presence, and interest in what was “going on,” was imminently reasonable. The car was parked in the center of the street near midnight. The occupants were shouting at each other. One yelled to another to “get the hell out [of the car].”
The fact that a pistol fell from the car or from the person of Jenkins logically sug- *1039 geste that those occupying the car could be armed and conceivably dangerous to the officers and others in the neighborhood where the car was parked.
If an officer detains a person for temporary questioning and reasonably suspects that that person possesses a dangerous weapon, he may search that person. CCrP Art. 215.1 B. These principles are derived by balancing a citizen’s constitutional right to privacy against the practical recognition of the duty of the police officer to investigate and apprehend criminal conduct and the danger that the officer faces in fulfilling that duty. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The temporary detention and search of the three occupants was constitutionally valid.
In additional assignments, Jenkins complains that his response to the police inquiry, “Whose gun is this and what’s going on?”, should not have been admitted because of the State’s failure to give him the CCrP Art. 768 notice.
Jenkins provoked a hearing six months before trial on his motion to suppress both the pistol and his response to the officer’s inquiry. Having been fully and formally informed at the hearing of the content of his response, Jenkins cannot and does not claim or show surprise or specific prejudice by the failure of the State to give the 768 notice. This is equivalent to a defendant learning of the content of his statement by “pretrial discovery” as contemplated by Art. 768. In such circumstances the notice in writing required by Art. 768 is superfluous and need not be given. See State v. Knapper, 458 So.2d 1284 (La.1984); State v. Thomas, 504 So.2d 907 (La.App. 1st Cir.1987), writ denied, 507 So.2d 225 (La.1987). CCrP Art. 768 derives from the constitutional principles that an accused in a criminal prosecution shall be informed of the nature and cause of the accusation and afforded due process or fundamental fairness. LSA-Constn. Art. 1, §§ 2, 13.
Jenkins also complains that the State did not prove that his response to the officer’s inquiry was freely and voluntarily given. LRS 15:451 refers only to a confession, as distinguished from an admission-in § 449. See State v. Jones, 451 So.2d 35 (La.App.2d Cir.1984), writ denied, 456 So.2d 171 (La.1984).
The trial court agreed with the State that the response of Jenkins, after appropriate Miranda warnings, was a res gestae spontaneous statement and was admissible without the 768 notice.
We find that the general inquiry of the officer was purely investigatory and was directed at all three adult detainees, whose detention we have already found reasonable under the circumstances. “Whose gun is this and what’s going on?” did not compel Jenkins to respond and, moreover, was not an inquiry reasonably likely to elicit an incriminating response, especially because the inquiring officer did not then know that Jenkins was a convicted felon.
The response of Jenkins (that a lady at a grocery store gave him the pistol to oil and clean for her a few days before) to the general investigative inquiry (whose gun is this) is not a confession admitting his guilt that he was a convicted felon intentionally possessing a firearm. General intent is an element of the crime. State v. Hills, 451 So.2d 1346 (La.App. 1st Cir.1984), reversed in part on other grounds, 457 So.2d 1183 (La.1984).
Jenkins’s response is an admission of a fact that merely tended to establish guilt and neither negates nor establishes that he is guilty of every element of the crime. The LRS 15:451 rule does not apply to an admission. State v. Bolton, 408 So.2d 250 (La.1981).
Defendant’s assignments relating to the admission of his response, including his related motion for mistrial, present no error.
OTHER ASSIGNMENTS
The word “firearm” is not defined in LRS Title 14 as is the term “dangerous weapon.” Jenkins says that the .38 cal. pistol “could have been a metal replica .... nothing more than a metal toy,” and that the State should have been required to prove beyond a reasonable doubt that the pistol would indeed fire live ammunition.
*1040 We agree that the State is required to prove beyond a reasonable doubt each element of the crime necessary to constitute the defendant’s guilt. LRS 15:271. The State was not required to prove that the pistol would fire live ammunition. See discussion in State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
The pistol is in evidence. The jurors were instructed that it was necessary for them to find, among other things, that the defendant “intentionally possessed and had under his control a firearm.” The word firearm was not defined for the jury by the court and the jurors were thus relegated to their understanding of the accepted common-sense, ordinary meaning of the word in the light of their view of the .38 cal. revolver. The suggestion that the pistol “could have been a metal toy or replica” of a real firearm was argued to the jury and was impliedly found not to be a “reasonable” hypothesis of innocence so as to raise a reasonable doubt in the minds of the jurors. LRS 15:438. The jury could and did conclude beyond a reasonable doubt that the .38 cal. revolver was a firearm. Rogers, supra. The evidence was legally sufficient to convict. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The trial court did not err in admitting proof of defendant’s 1975 conviction and in denying a mistrial, notwithstanding the prosecutor’s inadvertent reference in the opening statement to a 1976 conviction. State v. Foster, 437 So.2d 309 (La.App. 2d Cir.1983), writ denied, 440 So.2d 734 (La.1983).
Neither did the trial court err in not ordering on its own motion, a mistrial, in response to the prosecutor’s rebuttal argument that defense counsel’s argument was asking the jury “to play the part of a fool.” When defendant objected to the prosecutor’s remark, the court admonished the jury that the closing arguments were not evidence. The prosecutor apologized and explained that no offense was intended by the remark. Defendant did not move for a mistrial and we are not convinced that the remark influenced the jury or contributed to the verdict. State v. Barrow, 410 So.2d 1070 (La.1972), U.S. cert. denied.
DECREE
Defendant’s conviction is AFFIRMED.