1MIRIAM G. WALTZER, Judge.
The state applied for supervisory jurisdiction seeking reversal of the trial court’s order granting the defendant’s motion to suppress certain evidence seized pursuant to a search warrant. For the following reasons, we grant the state’s writ application and reverse the order suppressing the evidence.
STATEMENT OF THE CASE
On 20 February 2000, Byron Vigne was charged with one count of possession of at least 200 but less than 400 grams of cocaine, a charge to which he subsequently pled not guilty. The court heard the motion to suppress the evidence on 6 March 2001, and at the conclusion of the hearing the court granted the motion. On 28 March 2001, the court reconsidered the motion and again granted it. The State now comes before this court with a timely application seeking relief from these rulings.

FACTS

On 10 February 2000, Det. Lawrence Jones received a tip from a reliable confidential informant whose information had led to arrests and convictions in the past. The informant told him that a man nicknamed Booney who lived at 1223 Marigny *1186 Street was selling wholesale quantities | ¡..of crack cocaine. The informant also described Booney. Det. Jones discovered that the resident of 1223 Marigny was the defendant Byron Vigne, who was on probation for a narcotics conviction. The police computer listed Booney as Vigne’s nickname. Det. Jones obtained Vigne’s photograph and showed it to the informant, who then identified Vigne as the man he knew as Booney.
Det. Jones testified that the informant agreed to participate in a controlled buy from Vigne. Det. Jones searched the informant and gave him $50, and he transported the informant to the 1200 block of Marigny. While Det. Jones watched from an unmarked car parked within a block of 1223 Marigny, the informant went up to a man standing outside that address who Det. Jones identified as Vigne. Det. Jones testified the informant and Vigne conversed briefly, and then Vigne went inside the residence. Soon thereafter, Vigne exited the house and gave the informant a small object in exchange for currency from the informant. The informant then met with Det. Jones and turned over to him a rock of what was determined to be crack cocaine.
Based upon the foregoing, Det. Jones obtained a search warrant for 1223 Marig-ny. On 14 February 2000 the officers executed the warrant. As they arrived at the residence, they noticed Vigne and several other people standing outside the house. While some officers detained the people standing outside the house, others entered to execute the warrant. The officers then ordered all of the detainees to go inside the residence. Det. Jones testified he advised all of the detainees of their Miranda rights, using a card which he carried with him. After determining that the other people had no direct connection with the house and were not wanted, the officers | ^released all of the detainees, except Vigne and his girlfriend, Deanna Diamond, who also lived at the house.
Det. Jones testified he again advised Vigne and Diamond of their Miranda rights, again reading the rights from the card he carried, and he asked them if they had any narcotics in the house they wished to declare. Det. Jones also advised them the officers were going to search the house and curtilage area, specifically including the backyard and the ceiling panels in the house.[1] Det. Jones testified that when he mentioned the ceiling panels, Vigne became visibly nervous. Det. Jones testified that he again asked about any narcotics, and in response Vigne “made a motion with his head up toward the second bedroom.” Det. Jones testified that he, Vigne, and a few other officers then walked to the second bedroom, and Vigne then told him the drugs were in the ceiling. Det. Jones stated Vigne directed his attention to a certain ceiling panel, and when the officers moved the panel they discovered a blue and white cooler. They retrieved the cooler and found it contained a large bag of what was later found to be over 200 grams of cocaine, as well as a small scale and several razor blades.
On cross-examination, Det. Jones testified he did not specifically remember the exact rights of which he advised Vigne, indicating he read the rights from a card he carried for that purpose. He also admitted he did not have the card with him at the hearing, and he did not recite these rights in the police report. He reiterated he advised Vigne of the places in the residence he planned to search, which included the ceiling panels in the house. He stated he did not personally search the ceiling panels in the other rooms of the residence, *1187 and he was unsure if any other officer searched them, but he|4asserted that if the other rooms also had dropped ceilings they also were searched.

DISCUSSION

At the conclusion of the 6 March 2001 hearing, defense counsel asserted that the evidence should be suppressed because the officer failed to show the exact rights of which he advised Vigne, and counsel argued that the officer did not advise Vigne of any rights. He insisted that because the officers found the cocaine only after Vigne indicated which ceiling panel the drugs were hidden behind, the discovery of the cocaine was tainted by the officer’s failure to inform Vigne of his rights, and the evidence must therefore be suppressed. The State argued the officer testified he intended to search the ceiling panels even before Vigne indicated where the drugs were, and as a consequence even if the court were to find that the State failed to show Vigne’s statement was voluntary, the cocaine need not be suppressed because it would inevitably have been found during the search pursuant to the warrant. The court nevertheless suppressed the evidence because Det. Jones searched the particular ceiling panel holding the cocaine only after Vigne indicated the cocaine would be found there.
The State first argues the trial court erred by finding the State did not show that the officer adequately advised Vigne of his Miranda rights prior to Vigne’s indication of where in the ceiling the cocaine was located. Generally, when determining whether a custodial statement should be suppressed, the State bears the burden of proving that a defendant has been advised of his Miranda rights and has knowingly waived those rights. See State v. Brooks, 505 So.2d 714, 722-23 (La.1987); State v. Jones, 97-2217 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 396. Here, the officer testified that he advised Vigne of his Miranda rights as set forth on a card he carried for |fisuch purposes. The officer did not have the card with him at the hearing and he could not remember exactly what rights were on the card. At the conclusion of the hearing, the State offered to produce the card containing the rights if the court would continue the hearing, but the court refused to allow the State to do so.
In support of its argument that the officer’s testimony was sufficient to show that Vigne was adequately advised of his Miranda rights, the State cites State v. Garris, 603 So.2d 277 (La.App. 2 Cir.1992), and State v. Thomas, 504 So.2d 907 (La.App. 1 Cir.1987).[2] In Garris, the officer testified he read the defendant his Miranda rights, but did not specify exactly what rights he told the defendant. The appellate court found this testimony was sufficient to show an adequate advisement of rights in the absence of any contradictory evidence. Likewise, in Thomas, the officer testified at trial that he advised the defendant of his rights using his field officer’s notebook. However, he could not recite exactly what rights he gave, nor did he produce the notebook. On appeal, the court found that the officer’s testimony, in the absence of any contradictory evidence, was sufficient to show the officer had adequately advised the defendant of his Miranda rights.
*1188 Here, as in Thomas, the officer testified he advised Vigne of his rights using a written source, but he did not produce the written source. Also as in Thomas and as in Garris, here the defense produced no evidence that the rights given by the officer were somehow deficient (the only reference to any deficiency was argument by defense counsel that no rights were given, but this argument was not evidenced). Thus, Det. Jones’ testimony was Insufficient to establish an adequate advisement of rights in the absence of any contradictory evidence.
Both of the above cases dealt with the issue of whether a statement made by a defendant should be suppressed. Here, the court did not suppress any statements made by Vigne, but instead suppressed the evidence the officers found in the area where Vigne indicated the cocaine would be found. The State argues that if this court were to find that the State failed to prove that Vigne’s statement was voluntary due to any deficiency in the advisement of his rights, the evidence need not be suppressed because it would have been inevitably discovered when the officers performed the search incident to the warrant. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), the Court noted there are three exceptions to Wong Sun’s exclusionary rule: the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. See also State v. Welch, 449 So.2d 468 (La.1984); State v. Irby, 93-2220 (La.App. 4 Cir. 2/4/94), 632 So.2d 801. As this court noted in State v. Tassin, 99-1692, pp. 4-5 (La.App. 4 Cir. 3/15/00), 758 So.2d 351, 354:
In Nix v. Williams, 467 U.S. 431, 446-47, 104 S.Ct. 2501, 2510-11, 81 L.Ed.2d 377 (1984), the Supreme Court held that the exclusionary rule does not apply when the State proves that the unconstitutionally obtained evidence would inevitably have been found in a constitutional manner. “The court’s decision was based on its belief that it is unfair to penalize the government through application of the exclusionary rule where the police would have obtained the evidence even if no misconduct occurred.” State v. Garner, 621 So.2d 1203, 1208 (La.App. 4 Cir.1993), writ denied, 627 So.2d 661 (La.1993).
|7Thus, if the evidence inevitably would have been discovered in the absence of the defendant’s statement, the evidence need not be suppressed even if the statement were to be found to be involuntary.
The officers initially entered the house pursuant to a search warrant. Although the State did not include in its application the affidavit for the warrant, Det. Jones’ testimony established probable cause for the issuance of the warrant. See LSA C.Cr.P. art. 162; State v. Duncan, 420 So.2d 1105 (La.1982); State v. Hoffpauir, 99-0128 (La.App. 4 Cir. 4/7/99), 731 So.2d 1026; State v. Bradford, 98-1428 (La.App. 4 Cir. 12/9/98), 729 So.2d 1049. Indeed, the defense did not argue that there was no probable cause for the issuance of the warrant. Thus, the issue of the warrant’s validity is not at issue.
The trial court found that the officers would not have searched the particular ceiling panel where the cocaine was found if Vigne had not pointed out that panel. However, a reading of Det. Jones’ testimony indicates that he advised Vigne prior to the defendant’s statement that the officers intended to search the ceiling panels in the residence; indeed, it was this statement which caused Vigne to become nervous and indicate where the cocaine was hidden. In addition, this intention is apparently reflected in the police report, which the pros *1189 ecutor indicated he wanted to be made a part of the record but which is not included in the State’s application. Contrary to the trial court’s finding, the evidence introduced at the hearing indicates the officers intended to search the ceiling panels in the residence even before Vigne showed them where the cocaine was hidden. Thus, the cocaine would inevitably have been discovered even in the absence of any help from Vigne. Therefore, the trial court erred by suppressing the evidence.
|sIn his response to the State’s writ application, Vigne relies on Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980), where the officer testified he advised the defendant of his rights using a card, which he did not have with him at the hearing, and he could not enunciate the rights contained on the card. More importantly, that officer also could not remember if he asked the defendant if he understood these rights and could not remember if he ascertained whether the defendant understood and voluntarily waived the rights. The Court found the State failed to meet its burden. Quoting Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court noted:
“If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we reassert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.” 384 U.S., at 475, 86 S.Ct., at 1628.
Just last Term, in holding that a waiver of Miranda rights need not be explicit but may be inferred from the actions and words of a person interrogated, we firmly reiterated that “[t]he courts must presume that a defendant did not waive his rights; the prosecution’s burden is great....” North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).
In this case no evidence at all was introduced to prove that petitioner knowingly and intelligently waived his rights before making the inculpatory statement. The statement was therefore inadmissible.
9Tague, 444 U.S. at 470-471, 100 S.Ct. at 653.
Here, the officer testified he twice read Vigne his rights, once when the officers took all of the people at the scene into the residence and again after they had released those people who were not connected to the residence. The only reference to Vigne’s understanding of his rights came during cross-examination, when defense counsel asked him if during the first advisement of rights, “did [the defendant] indicate at all that he did not understand those rights at that time”, to which the officer replied, “No, not to me.” This failure, along with the failure either to recite the rights he read to Vigne or to introduce the card containing these rights (there was a second hearing where the State could have produced this card), could have rendered the Vigne’s indication of the particular ceiling tile containing the drugs invol *1190 untary. Interestingly, the defense did not argue at either of the suppression hearings or in the present response to the State’s application that the State failed to show that Vigne did not understand the rights given to him; the entire argument was based upon the officer’s failure to enunciate the rights he twice read to Vigne.
However, even if the State failed to prove the information was voluntarily given, the evidence still need not be suppressed because the inevitable discovery exception applies to this case. The response recognizes that the officer testified he told Vigne prior to his indication of the specific ceiling tile that the officers were going to search the entire house, including all the ceiling tiles. The respondent argues, however, that this argument is “incredulous” (apparently meaning incredible) because the officer admitted he personally only searched the tile indicated by Vigne. However, the trial court did not indicate it did not believe this statement, but rather its | inrecitation of the facts indicates it may have forgotten the officer so testified. The defense then argues that the inevitable discovery exception should not apply because the State failed to cite any cases to show that the exception may be used to search a house. The respondent cites no authority for this proposition, and indeed this court has applied the inevitable discovery exception to searches of residences. See State v. Cook, 99-0091 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227. Contrary to the respondent’s argument, the trial court did not state it found the officer’s testimony incredible. The officer’s testimony that he and his fellow officers intended to search all of the ceiling tiles even before Vigne indicated which one contained the drugs shows the evidence would have inevitably been discovered during the search pursuant to the search warrant.
CONCLUSION
Accordingly, the application for supervisory writs is granted. The judgment on the motion to suppress is reversed and the matter is remanded for further proceedings.
APPLICATION FOR SUPERVISORY WRITS GRANTED, JUDGMENT ON THE MOTION TO SUPPRESS REVERSED, CASE REMANDED FOR FURTHER PROCEEDINGS.
LOVE, J., dissents with reasons.

. The residence had drop ceilings.

. The state also cites State v. Robinson, 525 So.2d 712 (La.App. 1 Cir.1988), where the officers read the defendant his rights from a card. However, that court's decision did not address the issue of whether the officers' statement about reading from a card was sufficient to show an adequate advisement of rights in the absence of the production of the card.