384 So.2d 425 (1980)
STATE of Louisiana
v.
Earl BROWN.
No. 66263.
Supreme Court of Louisiana.
May 19, 1980.
*426 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Aubert D. Talbot, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
Robert L. Menuet, Napoleonville, for defendant-appellant.
CALOGERO, Justice.[*]
Defendant Earl Brown was charged by bill of information with armed robbery in violation of R.S. 14:64. After a jury trial he was found guilty as charged and was sentenced to sixty years at hard labor without benefit of parole. The only issue raised on this appeal is whether the trial court erred in denying defendant's motion to suppress his confession. Defendant contends that the state failed to show affirmatively that the confession was freely and voluntarily given.
According to the testimony at the hearing on the motion to suppress, defendant was arrested shortly after Antoinette Landry, owner of Landry's Grocery Store in Napoleonville, was robbed at gun point. Defendant was found a short distance from the store, hiding in weeds. Defendant was handcuffed, then given Miranda warnings. Approximately ten minutes after the arrest, the sheriff arrived and again read defendant the Miranda warnings. Defendant was then taken to the parish jail and, after again being advised of his Miranda rights, made an oral inculpatory statement to Chief Deputy Leonce Caballero. On August 28, 1979 two days after his arrest defendant repeated the substance of this inculpatory statement in a tape-recorded confession. After he completed the taped statement defendant was asked to give a written statement. Defendant refused and asked that he be appointed an attorney. It is the tape-recorded confession which was the object of defendant's motion to suppress.
There is no contention that defendant was not fully and adequately advised of his Miranda rights. Defendant's only argument is that the state failed to show that the defendant knowingly and intelligently waived these rights after having been informed of them. Defendant argues that because the state failed to show that defendant acknowledged his understanding of these rights and explicitly waived them, the confession should have been suppressed.
When a statement made during custodial interrogation is sought to be introduced into evidence the state bears a heavy burden to show that the defendant knowingly and intelligently waived his right against self-incrimination and the right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the United States Supreme Court reiterated that the state's burden is great and that the courts must presume that a defendant did not waive his rights. However, in Butler the Court also held that the waiver of Miranda rights need not be explicit but may be inferred from the circumstances surrounding the statementthe words and actions of the person interrogated:
"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly *427 inferred from the actions and words of the person interrogated." 99 S.Ct. at 1757.
At the hearing on the motion to suppress, defendant's tape-recorded statement was played into the record. At the beginning of the tape, Chief Deputy Caballero read defendant the Miranda rights.[1] At the end of the statement of rights, defendant responded "Uh-huh." Deputy Caballero then asked defendant if he would like to give a statement as to what occurred on the afternoon of August 26, 1979, the date of the instant offense:
"... I'm asking you if you would like to give us a statement and tell us the particulars of what happened onthat was Saturday afternoon, and that was August 26th, right at darkness; right? Right at, late in the evening, there, right about at, right after sunset."
To this defendant responded, "Right," and then proceeded to answer questions about the instant offense.
Later in the tape, defendant was asked about the voluntary nature of his statement:
By Chief Deputy Cabellero:
"You know like I told you before, I'm not forcing you or threatening you to make any statements, or promising you anything."
By Mr. Brown:
"Uh-huh."
By Chief Deputy Cabellero:
"You voluntarily told me that you would give me a statement and that you know you were wrong in doing it, and you wanted to just give us a statement on the whole facts; is that right?"
By Mr. Brown:
"Right."
Near the end of the taped conversation defendant was asked to give a written statement. He responded that he would not at that time and requested the appointment of counsel:
By Mr. Brown:
"No. Not at this time, you know. I'd rather wait and see and talk to my attorney, you know."
By Chief Deputy Caballero:
"Okay. That's up to you."
By Mr. Brown:
"And I'd rather for y'all to appoint me an attorney, because I can't afford one at this time, you know."
Questioning terminated with defendant's request for the appointment of counsel. The deputy then told defendant that he would be taken before a judge and an attorney would be appointed to represent him.
Although the record in this case does not show that defendant was specifically questioned as to his understanding of the rights delineated in Miranda or that he explicitly waived those rights, a knowing and voluntary waiver of those rights may be inferred from the circumstances surrounding the statement. After having been given the Miranda warnings, defendant reiterated the substance of his earlier statement. The taped statement indicates that when defendant was read the Miranda rights, he acknowledged them with a response of "Uh-huh" and proceeded to answer questions as to the offense. When questioned as to the voluntary nature of the statement, defendant agreed that his statement was not made under force, threats, or promises and that the statement was voluntary. Furthermore defendant's understanding of his Miranda rights seems clear in his refusal to give a written statement and in his request for the appointment of counsel. When asked if he would give a written statement, defendant replied that *428 he would prefer to wait until he spoke with an attorney and requested that an attorney be appointed since he could not afford one. Under these circumstances, we find that at the time he gave his taped confession, defendant had been adequately informed of his rights, understood those rights and chose to waive them. Therefore the trial court did not err in denying defendant's motion to suppress the confession.

Decree
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Honorable RICHARD H. GAUTHIER participated in this decision as an Associate Justice Pro Tempore.
[1] The transcript of the playback of the taped confession at the hearing on the motion to suppress indicates that defendant was read the following statement of rights:

"You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements."