603 So.2d 277 (1992)
STATE of Louisiana
v.
Steven Mark GARRIS.
No. 24511-KW.
Court of Appeal of Louisiana, Second Circuit.
September 3, 1992.
*278 Robert William Raley, for Garris, Steven Mark.
James M. Bullers, for State.
Before SEXTON, LINDSAY and BROWN, JJ.
BROWN, Judge.
This application for supervisory writ arises from defendant's conviction for DWI. Applicant contends that the trial court committed several errors during his trial.

FACTS
During the early morning hours (2:18 A.M.) of November 10, 1991, Trooper Chris McGarity of the Louisiana State Police was driving southbound on Airline Drive, just north of the Bossier City limits in Bossier Parish, when a 1982 Honda crossed the center line almost striking his vehicle. The officer testified he actually was forced off the roadway with his right side tires to avoid being hit. Officer McGarity turned around and caught up with the car and observed it weaving in the roadway. At this point he stopped the vehicle.
The trooper testified that as the driver of the vehicle (the defendant) exited the car, he appeared unsteady and smelled strongly of alcohol. The trooper then proceeded to give the defendant several field sobriety tests.
The first of these was the horizontal gaze nystagmus test, in which the officer moved a pen before the defendant's face and instructed him to follow the pen's movement with his eyes.
*279 Nystagmus is an involuntary jerking of the eyeball. This jerking is aggravated by central nervous system depressants, such as alcohol or barbiturates. State v. Armstrong, 561 So.2d 883, 885 (La.App.2d Cir. 1990), citing Ludington, Horizontal Gaze Nystagmus Test: Use in Impaired Driving Prosecution, 60 A.L.R. 4th 1129 (1988).
Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as they move from center focus to the point of maximum deviation at the side. State v. Armstrong, 561 So.2d 883, 885 (La.App. 2d Cir.1990), citing State v. Superior Court, County of Cochise, 149 Ariz. 269, 718 P.2d 171 (1986).
This test allows the officer to observe the eyes of the subject to see whether nystagmus was present at maximum deviation, whether he can smoothly pursue while tracking the pen with his eyes and to see at what point the onset of nystagmus occurred. The officer testified that the pursuit of both of defendant's eyes was very jerky. He stated that nystagmus was present at maximum deviation and the onset of nystagmus was prior to forty-five degrees.
The second test administered was the "one legged stand" test. In this test, defendant was asked to raise one foot, with the toe pointed into the air, and count to thirty. Trooper McGarity stated that the defendant had to lower his foot back to the ground on two occasions and at that point the officer stopped the test. McGarity explained that as part of his training on field sobriety tests, he had been instructed that if a subject must lower his foot twice for balance, he is unstable and the test should be stopped for his safety.
The third test was the "walk and turn" test. Defendant was instructed to place the heel of his right foot to the toe of his left foot with his arms at his side, and walk in a straight line, toe to heel, for nine steps, counting the steps aloud, and then turn in a pivoting maneuver and return the same way. McGarity explained that part of the test involves the subject remaining in the heel to toe position prior to walking until the officer has concluded his explanation of the test and has given permission for the subject to begin. The defendant did not remain in the stance as he was instructed to do, but rather got out of this position four times. When he finally began walking, defendant failed to place heel and toe together three times (though the officer could not remember how much he missed by) and had to be reminded to turn. Defendant also failed to count aloud while walking.
The final test administered by the officer at the scene was the "finger to nose" test. Although stating that he had received instructions on how to administer this test and had given the test under the supervision of other troopers, McGarity explained on cross-examination that this is not one of the standardized tests, but rather one he learned in the Air Force and used on this occasion. The defendant was instructed to hold his arms out to his sides and separately touch the tip of his nose with his index finger. McGarity stated that the defendant touched his nose with one finger, but with the other touched just below his nose.
Having come to the conclusion that defendant was under the influence of alcohol, Trooper McGarity placed him under arrest for driving while intoxicated. McGarity testified that he had already advised defendant of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to administering the field sobriety tests.
After placing defendant in the police car, Officer McGarity then went through the Uniform DWI Arrest Interview form. He asked defendant if he had been operating a motor vehicle and defendant responded affirmatively. McGarity also asked defendant if he had been drinking and defendant stated three beers. When asked whether or not he was ill, the defendant informed the officer that he was a diabetic. We note that at trial defendant relied solely on his medical records and these statements to the trooper concerning his diabetic condition as a defense. Only the trooper testified at the trial.
The defendant was then taken to Troop G Headquarters in order to provide an opportunity *280 to take an Intoxilyzer test which defendant refused. At the station defendant did sign a rights form which contained among other things, his Miranda warnings. The trooper testified that he read the entire form to defendant.
Defendant was tried before a judge and found guilty of driving while intoxicated. He has now applied for writs alleging five assignments of error.
DISCUSSION:
Assignment of Error No. 1: Trooper McGarity testified that he had apprised the defendant of his "Miranda Rights" prior to conducting any of the field sobriety tests, but he did not elaborate on what these rights were. During direct examination, the trooper testified that the defendant stated at the scene that he had been drinking (three beers) and that he had been operating the motor vehicle. Defense counsel objected, contending that the state had not properly laid a foundation for the introduction of inculpatory statements.
Defendant argued that the court's acceptance of trooper McGarity's assertion that the accused was advised of his "Miranda rights" was in error where the officer did not detail the specific rights which were told to defendant. Defendant contends that this allowed the trooper to state a legal conclusion.
The state has the burden to prove that the accused knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980). In absence of any evidence to prove that petitioner knowingly and intelligently waived his Miranda rights before making inculpatory statements to police, the statement is inadmissible. Tague v. Louisiana, supra. See also, State v. Willie, 410 So.2d 1019 (La.1982), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984); State v. Watkins, 526 So.2d 357 (La.App. 4th Cir.1988), and cases cited therein.
Trooper McGarity testified only that he "read [the defendant] his Miranda rights", but did not elaborate on what those rights were. In State v. Thomas, 504 So.2d 907 (La.App. 1st Cir.1987), cert. denied, 507 So.2d 225 (La.1987), the officer testified that defendant was read his Miranda rights from a field notebook, but at trial could not recite the warnings nor did the officer produce the notebook. The court in Thomas found the evidence sufficient to prove the appropriate warnings were administered noting the lack of contradictory evidence. See also State v. Robinson, 525 So.2d 712 (La.App. 1st Cir.1988), where officers testified the Miranda rights were read from a card but failed to produce the card.
In the instant case there is nothing in the record which indicates that defendant was not correctly Mirandized. The police are not required to have either a signed waiver or another officer to substantiate that the defendant was given the warnings. The record does not contain any information that the trooper did not correctly give the Miranda warnings. Under these circumstances the state sufficiently showed that defendant was given his Miranda rights. State v. Thomas, supra.
Even if error was committed, it was harmless. In State v. Gibson, 391 So.2d 421 (La.1980), the Louisiana Supreme Court adopted the "harmless error" test set forth by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as the test that adequately complies with both Federal and Louisiana law in assessing whether or not an error may be deemed to be harmless. State v. Westfall, 446 So.2d 1292 (La.App. 2d Cir.1984), writ denied, 450 So.2d 957 (La.1984). The Chapman test asks whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the conviction and requires that the reviewing court be able to declare a belief that the error was harmless beyond a reasonable doubt.
The burden of proving harmless error lies with the state. State v. Gibson, supra; State v. Westfall, supra. The trooper observed defendant driving the car, smelled a strong odor of alcohol and administered several field tests which, along with *281 defendant's obvious careless driving, clearly prove him guilty of DWI. Defendant did not testify and relied solely on his diabetic condition as a defense which was not credible. Defendant's statements after arrest did not contribute to his conviction.
Assignment of Error No. 2: Defendant claims the trial court erred in allowing the evidence of the horizontal gaze nystagmus test without requiring the state to prove that the trooper had been certified to administer that test and without requiring that the state offer the certification into evidence.
In State v. Armstrong, 561 So.2d 883 (La.App. 2d Cir.1990), writ denied, 568 So.2d 1077 (La.1990), this court addressed the admissibility of the horizontal gaze nystagmus test for the first time. The test was held to be admissible as evidence of intoxication once a proper foundation had been laid. This court stated that such a foundation had been laid when a showing was made that the officer who administered the test was trained in the procedure, was certified in its administration, and that the procedure was properly administered.
In Armstrong, this court held that sufficient proof existed of the officer's certification in administering the test where the officer was part of a DWI task force with extensive training in both the Intoxilyzer machine and field sobriety testing, had been specifically trained in administering the HGN test and had been certified by his department in administering the test, and described at trial the manner in which the test was administered. The officer in Armstrong did not present an actual certificate or other written form of proof of qualification to the court. He simply testified that he had been certified by his department.
In the instant case, McGarity testified on direct that he had received training regarding DWI apprehension and detection in the Air Force and had gained actual experience in this regard during his capacity as a narcotics patrolman for four years with that force. He also related that he had trained for several field sobriety tests including the HGN test and had been instructed in the use of the Intoxilyzer 5000 at the State Police Academy in Baton Rouge. He further testified that he had conducted the HGN test under the supervision of others while conducting his training and had since administered the test on other occasions in his capacity as a state trooper. He described at trial the manner in which he conducted the test, what he was looking for, and what he observed.
While Officer McGarity never stated that he was "certified" in administering the test, it appears from the record that he was qualified to do so. See State v. Armstrong, supra.
This assignment is without merit.
Assignment of Error No. 3: During recross examination of Officer McGarity, defense counsel apparently desired to show a Xerox page or pages from the standardized field sobriety book mentioned by the officer. The state objected, arguing it was irrelevant and stressing the fact that the witness was not an expert but a lay witness. After discussion with both attorneys, the trial court sustained the objection.
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. Art. 401. Evidence which is not relevant is not admissible. LSA-C.E. Art. 402.
The trial court has wide discretion in determining the relevancy of evidence and its determination will not be overturned absent a clear abuse of discretion. State v. Huizar, 414 So.2d 741 (La.1982); State v. Allen, 440 So.2d 1330 (La.1983).
Applicant argues that he should have been able to introduce the evidence under LSA-C.E. Art. 803(18) which states that as an exception to the hearsay rule, it is permissible to show published texts to an expert witness upon cross-examination. However, this article is inapplicable to the instant case because the objection sustained by the court did not involve hearsay *282 and the officer was not testifying as an expert, but as a lay witness.
Applicant's argument in this assignment relies on several assertions by defendant, including: (1) the field sobriety tests are not lay testimony but rather expert opinion concerning scientific tests; (2) the tests have objective grading criteria which must be followed by the officers using them; and (3) those objective criteria applied to defendant's case did not show that he was under the influence of alcohol. None of these assertions are correct.
Generally, a witness may testify only to facts within his knowledge and may not testify as to any impression or opinion that he may have. However, where the subject of the testimony is such that a person of ordinary experience may make a natural inference from observed facts, a lay witness may testify as to such inferences. In such cases, the witness must state the observed facts upon which the inference is based. State v. Moten, 510 So.2d 55 (La.App. 1st Cir.1987), writ denied, 514 So.2d 126 (La.1987); State v. Hallal, 544 So.2d 1222 (La.App. 3d Cir.1989), reversed on other grounds, 557 So.2d 1388 (La.1990).
The Louisiana Supreme Court has held that intoxication, with its attendant behavioral manifestations, is an observable condition about which a lay witness may testify. See State v. Allen, 440 So.2d 1330 (La. 1983); State v. Spence, 418 So.2d 583 (La. 1982); State v. Badon, 401 So.2d 1178 (La. 1981).
The ultimate decision of whether or not the defendant was intoxicated rests with the fact finder. State v. Allen, supra.
In State v. Armstrong, supra, this court cited State v. Nagel, 30 Ohio App.3d 80, 506 N.E.2d 285 (1986), in which the court stated:
It should be remembered that the gaze nystagmus test was one of a number of field sobriety tests administered by the officer to assist him in assessing [the defendant's] condition. Taken together, they were strongly suggestive of intoxication. It does not require an expert to make such objective determinations.
Clearly, Trooper McGarity was not testifying as an expert witness.
Applicant's second assertion is that these field sobriety tests have objective grading criteria which must be followed by the officers using them. However, an officer's subjective opinion determines whether a suspect has passed the objective field sobriety test. State v. Landry, 463 So.2d 761 (La.App. 5th Cir.1985), writ denied, 464 So.2d 1373 (La.1985)
Finally, applicant asserts that the proper objective criteria, when applied to defendant's case, do not show that he was under the influence of alcohol. In support of this allegation, applicant asserts that Officer McGarity "rendered an opinion contrary to the opinion mandated by the material which he admitted he should rely upon." This statement is based upon defendant's assertion that he actually passed the field sobriety tests. The record does not support this conclusion.
Applicant is incorrect in categorizing testimony concerning the field sobriety tests as expert testimony. The tests do not have objective grading criteria which must be followed by the officers using them, rather they are guidelines which are helpful in forming an officer's subjective opinion. Finally, the defendant clearly failed the field sobriety test administered by Officer McGarity. The pages from the handbook, even if authentic, would not have been relevant to the case. The trial court properly sustained the objection.
This assignment is without merit.
Assignment of Error No. 4: Defendant questions whether the evidence was sufficient to sustain his conviction.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
The Jackson standard is applicable in cases involving both direct and circumstantial *283 evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the evidence by viewing that evidence in the light most favorable to the prosecution. When the evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La. App. 2d Cir.1988).
In the instant case, the defendant was charged with operating a vehicle while under the influence of alcoholic beverages, in violation of LSA-R.S. 14:98. The elements of the offense are therefore, (1) operating a vehicle and (2) doing so while under the influence of alcohol.
The defendant was observed driving his vehicle in an erratic manner, swerving across the center line at least twice and once almost colliding with the arresting officer. The officer testified defendant appeared unsteady on his feet and had a strong odor of alcohol about his person.
Contrary to the assertions of defense counsel, defendant failed several field sobriety tests. Defendant had to be instructed in the horizontal gaze nystagmus test three times and when the test was complete the officer noticed defendant's eye pursuit was very jerky; defendant was unable to complete the one legged stand test due to his unsteadiness; during the walk and turn test, defendant failed to touch his heel to toe, forgot to turn and did not properly count aloud his steps as instructed.
Finally, defendant was unable to touch the tip of his nose with both fingertips (though he was able to do so with one and touched just below his nose with the other). Although the testifying officer stated that the finger to nose test has not been adopted by the Louisiana State Police as a standard field sobriety test, and was used only to allow the defendant to exculpate himself, this test has been considered as evidence of intoxication in numerous Louisiana cases in the past. See State v. Walker, 451 So.2d 679 (La.App. 2d Cir.1984), writ denied, 456 So.2d 1016 (La.1984); State v. Nix, 535 So.2d 866 (La.App. 2d Cir.1988); State v. Austin, 458 So.2d 602 (La.App. 1st Cir.1984); State v. Weilbaecher, 534 So.2d 973 (La.App. 5th Cir.1988).
Defense counsel's statement in brief that Trooper McGarity testified that this "test had been rejected by the Louisiana State Police as inaccurate" is not correct. The officer's only statement in this regard was that it had not been adopted by the State Police as one of their standardized tests.
The evidence in the instant case is sufficient to support defendant's conviction. See State v. Walker, 451 So.2d 679 (La. App. 2d Cir.1984), writ denied, 456 So.2d 1016 (La.1984); State v. Cichirillo, 440 So.2d 934 (La.App. 2d Cir.1983); State v. Nix, 535 So.2d 866 (La.App. 2d Cir.1988).
This assignment is without merit.
Assignment of Error No. 5: The basis for this assignment is the following exchange reflected at page 8 of the trial transcript after defense counsel objected to the testimony of Trooper McGarity:
MR. RALEY: It appears to me that this witness is reading from some document while he's testifying. I certainly don't object to him refreshing his memory by looking at it, but I would object to him looking at the document while he's answering the questions.
THE COURT: I think he's entitled to use his report, if that's what he has. Is that what you have, your report?
A. Yes, sir, report, and the notes I took out of the report.
THE COURT: And he has his own notes. He can use them to refresh his memory, past recollection recorded.
MR RALEY: Your honor, that's fine. If he wants to read them, I don't object to him reading them, but I object strenuously to him looking him [sic] and reviewing, reading from them while he's answering the questions. That's improper.
THE COURT: I don't know anyobjection's overruled.
*284 [Note that while the trial court referred to the witness being permitted to review his notes as "past recollection recorded" (which would be LSA-C.E. Art. 803(5)), the proper reference is to Article 612(B) governing a writing used to refresh memory.]
In a criminal case, a witness may be allowed to refresh his memory while testifying by use of any writing regardless of who prepared it, provided that after such inspection, the witness can testify to the fact. It is not the writing that is the evidence but the testimony of the witnesses (emphasis added). State v. Young, 552 So.2d 669 (La.App. 2d Cir.1989); LSA-C.E. Art. 612(B).
The record does not reflect that the witness was reading his report into evidence. The trial court characterized his behavior as refreshing his memory and the transcript reveals that his testimony was mostly in the form of response to questions.
In addition, applicant has not alleged any prejudice. A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused. LSA-C.Cr.P. Art. 921. Error, if made by the trial court, is not fatal unless the defendant demonstrates prejudice. State v. Humphrey, 412 So.2d 507 (La.1981); State v. Allen, supra; State v. Jackson, 545 So.2d 1228 (La.App. 2d Cir.1989), writ denied, 550 So.2d 634 (La.1989).
This assignment is without merit.
WRIT DENIED.
LINDSAY, J., concurs.