623 So.2d 23 (1993)
STATE of Louisiana
v.
Julia BREITUNG.
No. KW 92 2006.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
Writ Denied October 29, 1993.
*24 Doug Moreau, Dist. Atty., Baton Rouge by Tony Clayton, Asst. Dist. Atty., for State of La.
M. Michele Fournet, Baton Rouge, for defendant Julia Breitung.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOIL, Judge.
Relator, Julia Breitung, was charged by bill of information with first offense driving while intoxicated (DWI), a violation of LSA-R.S. 14:98. She pled not guilty and filed a motion to suppress evidence of the results of a field sobriety test. The trial court denied relator's motion to suppress and found her guilty as charged. The court deferred imposition of sentence and placed relator on unsupervised probation for one year with numerous special conditions. Relator subsequently applied for supervisory writs to this Court, contending that the trial court erred in denying the motion to suppress and that there was insufficient evidence to convict relator of DWI. This Court denied the writ application. She applied for writs to the Louisiana Supreme Court. On February 5, 1993, the Louisiana Supreme Court granted the writ and remanded to this Court for an opinion. State v. Breitung, 612 So.2d 71 (La.1993). On February 10, 1993, this Court issued an order directing relator to file a brief and set the issue for oral argument.
On April 11, 1992, Officer Daryl Lawrence was headed south on Highway 67 in Zachary, Louisiana, when he "clocked" relator with his radar driving 70 miles per hour in a 55 mile per hour speed zone. Officer Lawrence pulled relator over in order to issue a speeding ticket. He asked her to walk to the front of the police vehicle, which was approximately two car lengths away. She exited the vehicle but stopped at the rear of her car. He asked her again to walk to the police unit. Officer Lawrence testified that, when relator finally walked to the police unit, he observed that she swayed and appeared to be unsteady. Officer Lawrence stated that relator's speech was "sort of slurred" and her eyes were bloodshot. He testified that, after talking with relator, he smelled alcohol on her breath.
Officer Lawrence informed relator that she would be given a series of field sobriety tests. The first test administered was the horizontal gaze nystagmus test. Officer Lawrence described relator's performance on that test as poor. The second test given to relator was the walk and turn test. He described her performance on that test as poor and consistent with a person who was intoxicated. The final field sobriety test was the one leg stand test. Officer Lawrence testified that relator performed poorly on that test also and that her performance was consistent with a person who was intoxicated.
Officer Lawrence read relator her rights and took her to police headquarters. He testified that she told him that she was on her way to her mother's house in Clinton and that she had two drinks of scotch. Relator also notified him that she was on blood pressure medication. Officer Lawrence testified that he asked the relator to submit to the breath test and she refused.
*25 Officer Keith Arnold, a Zachary Reserve Police Officer, testified that he observed Officer Lawrence administering the field sobriety tests to relator. He stated that she performed "very poorly" on the walk and turn test. He also stated that she was unable to properly perform the one leg stand test. He testified that she appeared to be "very intoxicated."

ASSIGNMENT OF ERROR NUMBER ONE
In her first assignment of error, relator claims that the trial court erred in denying her motion to suppress the evidence as the trial court should not have considered the results of the horizontal gaze nystagmus test in its determination of guilt or innocence. Relator contends that Louisiana law requires the exclusion of the test results as evidence of intoxication because of: (1) the subjective nature of such testing; (2) the variety of factors other than intoxication that can yield a positive result; (3) the lack of statutory standards regulating the training and qualification of agents administering the test; and (4) the absence of general acceptance of the test in the scientific community.
The United States Supreme Court has defined the horizontal gaze nystagmus test as follows:
The "horizontal gaze nystagmus" test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated `the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct.'
Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 2641 n. 1, 110 L.Ed.2d 528 (1990) (quoting 1 R. Erwin et al., Defense of Drunk Driving Cases § 8A.99, pp. 8A-43, 8A-45 (1989)).
The Louisiana Second Circuit Court of Appeal held that the results of a horizontal gaze nystagmus test (HGN test) are admissible as evidence of intoxication in a DWI case provided a proper foundation is laid. State v. Armstrong, 561 So.2d 883, 887 (La.App.2d Cir.), writ denied, 568 So.2d 1077 (La.1990). The proper foundation for admitting the test has been laid "when a showing has been made that the officer who administered the test was trained in the procedure, was certified in its administration and that the procedure was properly administered." Armstrong, 561 So.2d at 887.
The Louisiana Third Circuit Court of Appeal followed Armstrong and found no error in the trial court's admission of the testing procedure into evidence. State v. Regan, 601 So.2d 5, 8 (La.App. 3d Cir.1992), writ denied, 610 So.2d 815 (La.1993). Furthermore, the Second Circuit, in a more recent decision, reaffirmed its holding in Armstrong. State v. Garris, 603 So.2d 277, 281 (La.App. 2d Cir.), writ denied, 607 So.2d 564 (La.1992).
In the instant case, the state established that Officer Lawrence had been trained in the administration of the HGN test. He attended a two week course at the Baton Rouge City Police Headquarters which consisted of classroom training and actual practice of the test on subjects. After passing the course, he received a certificate. In addition to the instant case, Officer Lawrence has administered the HGN test to numerous other DWI suspects. At trial, Officer Lawrence described the manner in which the test is administered. He also explained that, in performing the test on relator, "[t]here was not smooth pursuit in either one of her eyes." He stated that, at maximum deviation, he "noticed a distinct jerking...." Further, there was a distinct jerking of the eyes "prior to the onset of the forty-five degree angle."
In denying relator's motion to suppress the HGN test, the trial court stated that, according to the officer's testimony, the test was not used for the purpose of establishing relator's intoxication but, rather, the test was used by the officer to determine whether or not he needed to "go any further" and proceed with other field tests.
We have carefully reviewed the testimony of Officer Lawrence in light of the criteria set forth in Armstrong and find that all *26 requisites were met in the instant case. Accordingly, we find that the trial court did not err in denying relator's motion to suppress and in admitting the testing procedure into evidence.

ASSIGNMENT OF ERROR NUMBER TWO
In her second assignment of error, relator contends that the evidence was insufficient to support the conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
LSA-R.S. 14:98 reads, in pertinent part:
A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(1) The operator is under the influence of alcoholic beverages....
In the instant case, Officer Lawrence testified that he stopped relator after clocking her with his radar at a speed of seventy miles per hour in a fifty-five mile per hour speed zone. Officer Lawrence admitted that, over the approximately three tenths of a mile that he followed relator, he observed no erratic driving other than her speeding.
Officer Lawrence testified that he had to ask relator two times to walk to the police vehicle. He stated that when she exited her automobile she appeared to be steady but as she walked to the police vehicle she was swaying and appeared to be unsteady. He stated that "she didn't walk a straight line back to me, she walked, you know, from side to side before she got back to the car." Officer Lawrence also noted that relator's speech was "sort of" slurred and her eyes were bloodshot. He testified that after talking with relator he smelled alcohol on her breath. At this point he advised her that she would be given a variety of field sobriety tests, beginning with the HGN test. Officer Lawrence stated that, depending on the results of that test, he would determine whether or not to proceed with the other field sobriety tests.
Upon performing the HGN test on relator, Officer Lawrence observed that she did not have smooth pursuit in either eye and that at maximum deviation there was a distinct jerking. He also observed distinct jerking of the eyes prior to the onset of the forty-five degree angle. He described her performance on the HGN test as poor.
Officer Lawrence then administered the walk and turn test. He informed the court that the test consisted of asking the subject to place the heel of her right foot against the toe of her left foot and to stay in that position until he finished giving the instructions. In the instructions the subject is asked to take nine heel to toe steps in a straight line while keeping her hands down by her side and counting the steps out loud. After nine steps the subject is to make "several small pivot steps, to turn around and get back in the starting position and come back nine steps."
Officer Lawrence stated that, after he explained the test to relator, she indicated that she understood. The area in which the test *27 was administered was clear of debris and obstruction. He stated relator did not bring her feet heel to toe and started the test prior to his completion of the instructions. He also noted that relator kept raising her hands in what appeared to be an attempt to keep her balance. He testified that relator performed poorly on the walk and turn test and that her performance on the test was consistent with a person who was intoxicated.
Officer Lawrence testified that he then administered the one leg stand test. He stated that this test consisted of having the subject stand on one leg with her hands by her side. The subject is to raise her foot approximately six inches off the ground and count from one thousand one to one thousand thirty. He stated that prior to giving the test he asked relator if she had any physical defects which would cause any problems in performing this test. Relator informed him that she did not. Officer Lawrence testified that relator indicated that she understood his explanation of the test.
Officer Lawrence stated that relator began the one leg stand test by raising her foot approximately twenty inches above the ground. After approximately three seconds she had to bring her foot down and start the test again. He stated that throughout the test she put down her foot and had to start the test over again. She also raised her hands to shoulder level in order to keep her balance. He did note that she counted correctly. He stated that she performed poorly on the test and that her performance was consistent with a person who was intoxicated.
Officer Lawrence then informed relator of her rights and took her to the police station, where he asked her some questions. He testified that relator told him that she had "two drinks of scotch." Relator signed a form which explained her rights regarding tests for intoxication and that her license would be suspended for 180 days if she refused to submit to testing. Officer Lawrence testified that he asked relator to take the breath test and she refused.
Officer Arnold testified that he "backed up" Officer Lawrence on the stop of relator. He stated that he heard relator tell Officer Lawrence that she had had two drinks. He also observed the field sobriety tests administered by Officer Lawrence. Officer Arnold testified that relator performed poorly on the tests and appeared to be very intoxicated. He admitted that he did not know very much about the HGN test and, thus, would not comment on that test.
Dexter Rollins testified that relator stopped at his house on the evening of April 11, 1992. He stated that she appeared to be sober and he did not notice any signs of intoxication. Rollins testified that relator did drink an alcoholic beverage, a scotch and water, while she was at his house. He testified that when she left his house he did not have any concerns about her ability to drive.
Relator testified that, on the day of the offense, she attended a funeral. She then went home, exercised, and handled a problem with her mother-in-law. She stated that because of the funeral and the problem with her mother-in-law she was "pretty upset." She packed some clothes, some food, and a bottle of scotch to take to her mother's house in Clinton where she was going to spend the night. Relator testified that on the way to her mother's house she stopped at the Rollins' home. While at the Rollins', Mr. Rollins fixed her a drink, a scotch and water. She testified that this drink was the only drink she had the entire day. Relator stated that she was "definitely speeding." She testified that she was nervous, upset, and "visibly shaking" because of the events of the day and the traffic stop. Relator stated that she informed the officer that she had taken high blood pressure medication that morning.
The trial court's judgment indicates that, after considering the credibility of the witnesses and weighing the evidence, it accepted the testimony of the state's witnesses and rejected that of the defense witnesses. This Court will not address the credibility of the witnesses or reweigh the evidence. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every element of the offense had been established.

*28 CONCLUSION
Based on the foregoing, relator's writ application is hereby denied.
WRIT DENIED