GAIDRY, J.
|2The defendant, John Timothy Waldrop, was charged by bill of information with vehicular homicide, a violation of La. R.S. 14:32.1. The defendant pled not guilty. The defendant filed a motion in limine to exclude evidence of field sobriety tests without a Daubert hearing; and a motion to suppress statements. Following a hearing on these matters, the motions were denied. Thereafter, the defendant withdrew his prior plea of not guilty and, at a Boykin hearing, entered a Crosby plea of guilty to the charge, reserving his right to challenge the trial court’s rulings on the pretrial motions. See State v. Crosby, 338 So.2d 584 (La.1976). The defendant was sentenced to sixteen years at hard labor with the first five years of the sentence to be served without benefit of probation, parole, or suspension of sentence. The defendant was also ordered to pay a $5,000 fine. The defendant now appeals, designating two assignments of error. We affirm the conviction and sentence.

FACTS

Because the defendant pled guilty, the facts were not fully developed. According to testimony adduced at the preliminary examination and pretrial hearings, on July 22, 2007, at about 3:00 a.m., the defendant was driving a van south on La. Hwy. 24 in Terrebonne Parish. At the intersection of La. Hwy. 24 and La. Hwy. 3040, the defendant struck a vehicle being driven by Amanda Larpenter, who sustained fatal injuries as a result of the crash. The defendant was transported to Louisiana State Police Troop C where he took a Breathalyzer test. The defendant’s blood-alcohol content was .126 percent.
| ^ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the court erred in denying his motion to exclude evidence of the field sobriety tests. Specifically, the defendant contends that such tests are subject to scrutiny under the Daubert standard.
Louisiana Code of Evidence article 702 dictates the admissibility of expert testimony. It provides, “if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219, 1239, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The supreme court has placed limitations on this codal provision in that, “[e]xpert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men.” State v. Stucke, 419 So.2d 939, 945 (La.1982).
In State v. Foret, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 *783 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeep-ing function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. State v. Chauvin, 2002-1188 (La.5/20/03), 846 So.2d 697, 700-01. Thus, Louisiana has adopted Daubert’s requirement that in order for technical or scientific expert testimony to be admissible under La.Code Evid. art. 702, the scientific evidence must rise to a threshold level of reliability. Daubert’s general “gatekeeping” applies not only to testimony based upon scientific |4knowledge, but also to testimony based on “technical” and “other specialized knowledge.” Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171,143 L.Ed.2d 238 (1999); Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, 234. The purpose of a Daubert hearing is to determine the reliability of an expert’s methodology, not whether the expert has the proper qualifications to testify. Cheairs v. State ex rel. Dep’t of Transp. & Dev., 2003-0680 (La.12/3/03), 861 So.2d 536, 541. See State v. Vidrine, 2008-1059 (La.App. 3rd Cir.4/29/09), 9 So.3d 1095, 1106-07, writ denied, 2009-1179 (La.2/26/10), 28 So.3d 268.
The defendant filed a motion in limine arguing that evidence of his field sobriety tests must be evaluated under the Daubert standard, which would require a pretrial Daubert hearing. At the motion in limine hearing, the defendant argued that the testimony of a police officer (or officers) who conducted the standardized field sobriety tests — walk-and-turn, one-leg stand, and the horizontal gaze nystagmus (HGN) — must first be presented to the court in a Daubert hearing to determine whether or not such tests are scientifically valid. The defendant asserted at the hearing that an officer’s observations and conclusions at trial of intoxication based on poorly performed field sobriety tests is not lay testimony. The defendant also cited to United States v. Horn, 185 F.Supp.2d 530, 560-61 (U.S.D.C.Md.2002), a ten-year-old federal case out of Maryland, which found that, while the arresting officer could give lay opinion testimony that the defendant was driving while intoxicated,
[the officer] may not use language such as “test,” “standardized clues” or express the opinion that Horn “passed” or “failed,” because the government has not shown, under Rule 702 and the Daubert/Kumho Tire [Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ] decisions, that these conclusions are based Lon sufficient facts or data and are derived from reliable methods or principles.
In a written order denying the defendant’s motion in limine, the court provided, in pertinent part:
[T]he following facts guide the court. A fatal accident occurred shortly before 3 o’clock a.m. on July 22, 2007, at the intersection of Louisiana Highway 24 South and Louisiana Highway 3080 in Terrebonne Parish. One driver died on the scene. The other was the defendant, John Timothy Waldrop. Trooper Corey Pennison arrived on the scene at or about 3 o’clock a.m. and conducted a crash investigation. When he approached the defendant, Trooper Penni-son detected a strong odor of alcohol. He also noticed the defendant’s swayed balance, slurred speech, and bloodshot/watery eyes. Trooper Pennison administered the horizontal gaze nystag-mus test; Mr. Waldrop performed poorly. Trooper Pennison testified that he advised the defendant of his Miranda rights; that Mr. Waldrop understood these rights; and that he voluntarily *784 waived those rights. Trooper Treone Larvadain handcuffed the defendant and transported him to Troop C. Trooper Larvadain testified that she advised Mr. Waldrop of his Miranda rights in the vehicle and at the station; that he understood these rights; and that he voluntarily signed a waiver of rights form. Trooper Larvadain administered a chemical breath test to Mr. Waldrop using the Intoxilyzer 5000. A result of .126g% was reported. She also administered the walk and turn test and one-legged stand. Mr. Waldrop performed poorly. He was then transported to Terrebonne Parish Criminal Justice Complex and booked.

Motion In Limine Regarding Field So-brietg Testing

The defendant urges the Court to adopt a new test for gauging the admissibility for nonchemical field sobriety testing, including but not limited to the horizontal gaze nystagmus test[.] The Court declines to do so. While other courts may apply the rigors of Dau-bert/Foret to nonchemical field sobriety testing, the Court has located no Louisiana authority mandating that it do so. It has been Louisiana law that psycho-motor aspects of the field sobriety testing are admissible without expert testimony or interpretation because they consist of objective components that are commonly understood. They are in the “same category as other commonly understood signs of impairment such as glassy or blood-shot eyes, slurred speech, staggering, flushed face, labile emotions, [and the] odor of alcohol.” State v. Meador, 674 So.2d at 832 [sic]. Thus, an officer is permitted to testify as to his observations of the psychomotor portion of test. In Louisiana, HGN test results are admissible without expert testimony so long as the proper foundation has been shown both as to the administering | ^officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test. See, e.g., State v. Armstrong, 561 So.2d 883 [(La.App. 2nd Cir.), writ denied, 568 So.2d 1077 (La.1990) ].
We agree with the court’s ruling. It has been widely recognized that intoxication, with its behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1334 (La.1983). Behavioral manifestations in the absence of a scientific test are determined on a case by case basis. An officer’s subjective opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication. See State v. Kestle, 2007-1573 (La.12/2/08), 996 So.2d 275, 279. Results of the HGN test are admissible as evidence of intoxication provided a proper foundation is laid. The proper foundation for admitting the test has been laid when a showing has been made that the officer who administered the test was trained in the procedure, was certified in its administration and that the procedure was properly administered. See State v. Breitung, 623 So.2d 23, 25 (La.App. 1st Cir.), writ denied, 626 So.2d 1168 (La.1993). A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert. Kestle, 996 So.2d at 280.
At the preliminary examination hearing (conducted five months prior to the motion in limine hearing), Louisiana State Trooper Corey Pennison testified that he conducted the HGN test on the defendant at the accident site. According to Trooper Pennison, he was trained and certified in administering standardized field sobriety tests. Louisiana State Trooper Treon Larvadain testified at the preliminary examination hearing that she drove the de *785 fendant from the accident site to Troop C. At Troop C, she conducted the other two standardized tests on the defendant, namely the 17walk-and-turn and the one-leg stand. According to Trooper Larvadain, she had training in the detection and apprehension of impaired drivers. Previously, she worked for the Lafourche Parish Sheriffs Office where she had taken a post-academy field sobriety course. Further, at the State Police Academy she took a forty-hour course in field sobriety training.
Thus, while the officers were trained and certified in the proper administration of the field sobriety tests, such tests do not have objective grading criteria which must be followed by the officers using them. Rather they are guidelines which are helpful in forming an officer’s subjective opinion. State v. Garris, 603 So.2d 277, 282 (La.App. 2nd Cir.), writ denied, 607 So.2d 564 (La.1992). Had Troopers Pennison and Larvadain testified at trial, their subjective opinions in determining whether the defendant had passed the objective tests would have constituted non-expert testimony. See Garris, 603 So.2d at 282. Accordingly, no Daubert hearing was required. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues that the trial court erred in denying his motion to suppress statements. Specifically, the defendant contends that the State failed to establish that he understood his Miranda rights or that he was given his Miranda rights.
When a court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the court’s discretion, i.e., unless such ruling is not supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81. However, a court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La.12/1/09), 25 So.3d 746, 751.
IsWe note initially that it is unclear what statement or statements the defendant sought to suppress. Our review of the record indicates the defendant’s only statement was to Trooper Pennison at the site of the accident wherein he said he was driving and passed through a green light when he hit the other vehicle. Accordingly, it is not clear why the defendant filed a motion to suppress what appears, by all accounts, to be an exculpatory statement. In any event, before a confession may be introduced into evidence, the State must establish that the accused was advised of his constitutional rights under Article I, § 13 of the Louisiana Constitution and the Supreme Court’s decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In State v. Brown, 384 So.2d 425, 426-27 (La.1980), the Louisiana Supreme Court stated:
When a statement made during custodial interrogation is sought to be introduced into evidence the state bears a heavy burden to show that the defendant knowingly and intelligently waived his right against self-incrimination and the right to counsel. Miranda[.] In North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the United States Supreme Court reiterated that the state’s burden is great and that the courts must presume that a defendant did not waive his rights. However, in Butler the Court also held that the waiver of Miranda rights need not be explicit but may be inferred from the circumstances surrounding the statement — the words and actions of the person interrogated:
*786 An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant’s silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution’s burden is great; but in at least some |9cases waiver can be clearly inferred from the actions and words of the person interrogated. 99 S.Ct. at 1757.
In Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140-41, 89 L.Ed.2d 410 (1986), the United States Supreme Court stated:
Miranda holds that “[t]he defendant may waive effectuation” of the rights conveyed in the warnings “provided the waiver is made voluntarily, knowingly and intelligently.” The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the “totality of the circumstances surrounding the interrogation” reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived, (citations omitted).
In his brief, the defendant asserts that Trooper Pennison’s testimony that he advised him of his rights at the scene of the accident was uncorroborated. Further, at Troop C, Trooper Larvadain read the defendant his rights, but did not ascertain if he understood those rights. The defendant testified that he did not recall being advised of his rights at any time.
In a written order denying the defendant’s motion to suppress statements, the court provided, in pertinent part:
Defendant urges the court to suppress certain statements he made to law enforcement officers at or near the accident scene because he was not properly Mirandized and did not knowingly and voluntarily waive his constitutional rights. Before an inculpatory statement, made during a custodial interrogation, may be introduced into evidence, the State must prove beyond a reasonable doubt that the Defendant was first advised of his Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. La. R.S. 15:451; State v. Comeaux, 93-2729, p. 47 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); “Intoxication renders a statement involuntary only when the intoxication is of such a degree that it negates the defendant’s comprehension and renders him or her unconscious of the consequences of what he or she is saying.” State v. Narcisse, 462 [426] So.2d 118, 125-125 (La.1983), cert. denied 464 U.S. 865 [104 S.Ct. 202, 78 L.Ed.2d 176] (1983).
*787 | ,nDuring the course of the motion hearings, the Court heard extensive testimony from Troopers Pennison and Larvadain. Both testified under oath that they separately advised the defendant of his Miranda rights, that the defendant understood his rights, and that the defendant voluntarily waives those rights. Although both officers indicated that there were visible signs of the defendant’s intoxication, neither testified that he was incoherent, responded inappropriately, or was “unconscious of the consequences of what he was saying.” Their testimony was untarnished by even a hint of coercion, duress or promises of leniency. Given the testimony, the Court finds that the defendant was informed of his constitutional rights at least twice, that he understood these rights, and that his statements to officers on May 17, 2005 were freely and voluntarily made.
We agree with the court’s ruling. At the hearing on the motion to suppress statements, Trooper Pennison testified that he approached the defendant at the accident scene where the defendant had just refused medical treatment from Aca-dian Ambulance personnel. Trooper Pen-nison read from a card the Miranda warnings to the defendant. Trooper Pennison then asked the defendant what happened. The defendant responded that he was traveling south on La. Hwy. 24, that he had a green light as he approached the intersection, and that he struck a car.
It is not clear from this portion of Trooper Pennison’s testimony whether, after being Mirandized, the defendant responded that he understood his rights. However, as the Butler Court noted, the waiver of Miranda rights need not be explicit but may be inferred from the circumstances surrounding the words and actions of the person being questioned. Butler, 441 U.S. at 373, 99 S.Ct. at 1757.
Despite the initial lack of evidence of an explicit waiver of Miranda rights by the defendant at the motion to suppress hearing, subsequent testimony at the hearing established such an explicit waiver by the defendant. For example, Trooper Larva-dain testified at the hearing that she | nalso Mirandized the defendant at the accident site. After reading the Miranda rights to the defendant from a card, Trooper Larva-dain stated, “When I was out by my unit I asked him if he understood his rights once I finished, and he said yes.” The defendant testified at the hearing that he did not recall Trooper Pennison advising him of his rights, and he further did not recall ever waiving his rights. Following the defendant’s testimony, Trooper Pennison was recalled to testify and the following direct and cross-examination took place:
Q. [by prosecutor]: Trooper Pennison, you heard the defendant’s testimony; is that correct?
A. That is correct.
Q. Is there any doubt in your mind whether or not you read this man his rights before he gave you the statement that he passed the green light and hit a car?
A. There’s no doubt.
[[Image here]]
Q. [by defense counsel]: After you read him his rights, what did he say?
A. The last question is do you understand your rights, and he said yes.
Q. Is that the last thing he said before he gave you his statement?
A. Yes.
There is no evidence in the record to suggest that the defendant was intimidated, coerced or deceived in any way which would have led him to waive his right to remain silent for any reason other than as *788 a function of his free will. See State v. Robertson, 97-0177 (La.3/4/98), 712 So.2d 8, 30, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998). The defendant had been adequately informed of his rights, understood those rights, and clearly waived his rights explicitly, as well as (where applicable) implicitly through his actions and words. See Brown, 384 So.2d at 427-28. Accordingly, we find no legal error or abuse of discretion by the trial court |12in denying the defendant’s motion to suppress. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
HUGHES, J., concurs.